SIGNAL GASOLINE CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 47621.   Promulgated March 14, 1932.

*Melvin D. Wilson, Esq.*, for the petitioner.
*J. A. Lyon, Esq.*, and *E. L. Updike, Esq.*, for the respondent.

OPINION.

LANSDON: The respondent has asserted deficiencies in income taxes for the period May 1 to December 31, 1924, and for the calendar years 1925 and 1926, in the respective amounts of $14,137.05, $19,-340.18 and $40,804.19. The following issues raised by the pleadings

will be discussed in the order stated: (1) Has the statute of limitations barred assessment and/or collection of the deficiencies asserted for 1924 and 1925? (2) Is the petitioner entitled to deductions for depletion of certain natural gas producing property for 1925 and 1926? (3) If the Board denies deductions for depletion, is the petitioner entitled to amortization deductions for certain casinghead gas contracts? (4) What is the basis for computing profit or loss on the sale of certain casinghead gas contracts?

The petitioner is a dissolved California corporation, acting through its statutory trustees. It filed income-tax returns for the period May 1 to December 31, 1924, and the calendar year 1925 on May 13, 1925, and May 15, 1926, respectively. Section 277(a) of the Revenue Act of 1926 provides that any income taxes imposed by the Revenue Act of 1924 shall be assessed and collected within four years from the date the return was filed and that income taxes imposed by the Revenue Act of 1926 shall be assessed and collected within three years from the date the return was filed. The respondent had, then, until May 13, 1929, to assess and collect any additional taxes for 1924 and until May 15, 1929, to assess and collect any additional taxes for 1925. Pursuant to section 278(c) of the Revenue Act of 1926, the petitioner executed a written agreement under date of November 21, 1928, by which it consented to the assessment of any income taxes due for 1924 and 1925 at any time on or before December 31, 1929. Such writing was filed with the respondent on December 3, 1928, and was thereafter signed for him by one of his employees. On December 28, 1929, which was within the statutory period as extended, the deficiencies involved herein were asserted. The petitioner contends, however, that the agreement extending the statutory period was ineffective, since it was not signed personally by the Commissioner. We have heretofore held contrary to such contention. *Frederick T. Fleitmann*, 22 B. T. A. 1223. The deficiencies are not barred by the statute of limitations.

By contract dated May 1, 1924, the petitioner acquired the assets of the Signal Gasoline Company, subject to all outstanding obligations and liabilities not exceeding the total amount of $51,076.89, in exchange for 400,000 shares of petitioner's common capital stock having a par value of $1 per share. Included in the assets acquired were some 40 casinghead gas contracts which the Signal Gasoline Company had entered into directly or had acquired by assignment from its principal stockholder, R. E. Bering. Under contract of the same date the petitioner purchased the assets of the Huntington Gasoline Company, subject to all liabilities, for $107,488.41, to be paid in cash, plus interest at 8 per cent per annum until paid and 50,000 shares of petitioner's common stock. Included in the assets

acquired were certain casinghead gas contracts which the Huntington Gasoline Company had entered into directly or had acquired by assignment.

All of the casinghead gas contracts thus acquired by the petitioner as above set forth covered oil and gas-producing properties in the Signal Hill field. While the contracts were not identical in their terms, the differences are not important in determining the issues raised. Each contract follows the same general form and creates similar obligations and benefits. The material portions of a typical contract follow:

WHEREAS: said party of the first part, is the lessee of certain property located in Los Angeles County, State of California, and more particularly described as follows, to-wit:

&ast; &ast; &ast; &ast; - &ast; &ast; &ast;

and has developed or is developing and intends to further develop said property for oil and gas by drilling thereon, and

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

WHEREAS, said second party, in order to augment his supply of gas for said plant or plants, desires to purchase and receive from said first party, all of the natural gas which may be produced from its above described property, for the purpose of manufacturing and extracting gasoline therefrom;

Now, THEREFORE, in consideration of the mutual covenants herein contained and other good and valuable consideration, receipt of which is hereby reciprocally acknowledged, the parties hereto hereby covenant and agree to and with each other as follows, to-wit:

1. The said party of the first part hereby lease and agree to furnish and deliver to said party of the second part, for the purpose of manufacturing and extracting gasoline therefrom, all of the gas produced by it from the above described property, for and during the entire period of time it shall produce gas therefrom, the said party of the second part having and being hereby given the sole and exclusive right to treat all gas produced by said party of the first part as aforesaid. &ast; &ast; &ast;

2. Said party of the second part agrees to erect, equip and put into operation a plant having a capacity to handle and treat three million cubic feet of gas a day within ninety days from and after the date hereof. When said plant is completed and ready to commence operations, said party of the first part agree to commence the delivery of the gas being produced from the above described property, into the lines of the party of the second part; said lines being carried to each producing well of the party of the first part on said property, by and at the expense of the party of the second part. &ast; &ast; &ast;

3. In full consideration of the rights herein granted, said party of the second part agrees to pay to said party of the first part, thirty-three and one-third per cent (33⅓) of the gross proceeds received by him from the sales of gasoline manufactured or extracted by him from said gas. Party of the second part agrees to pay for said royalty gasoline as follows: Two and one-half cents (2½) per gallon under retail price of Red Crown gasoline in Los Angeles, California, when gravity is over 70° Baume; three cents (3) per gallon under retail price of Red Crown gasoline in Los Angeles, California, when gravity is under 70° Baume.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

6. After said gas has been treated by said party of the second part and the gasoline content extracted therefrom, the remaining dry gas shall belong to and be the property of the party of the first part; the party of the second part having, however, the right to use free of charge such of said gas as is necessary for fuel in his aforesaid operations. * * *

7. Party of the second part shall have the right to lay necessary pipe lines upon and across the property of the party of the first part, subject to lease or leases affecting said property, and at all times shall have full right of ingress and egress.

8. Said party of the first part shall provide and maintain all necessary and proper equipment and facilities for separating the oil and gas produced on said premises in order to save and render available all of said gas for the aforesaid treatment by said party of the second part, and said party of the second part shall have the right to inspect such equipment at all reasonable times.

\* \* \* \* \* \* \*

10. Party of the second part shall provide and maintain such apparatus as shall be necessary to meter or measure the quantity of gas produced from said property, and returned to said property.

11. This agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, successors and assigns of the party of the first part, and to the heirs, administrators, executors and assigns of the party of the second part.

The casinghead gasoline plant called for in the contracts was constructed by the Signal Gasoline Company and was included in the assets acquired by petitioner from that company. During the taxable periods the petitioner was engaged in the manufacture and sale of casinghead gasoline and in the sale of dry gas.

The petitioner claims an allowance for depletion under section 204(c) of the Revenue Act of 1926 on its interest under the casinghead gas contracts. It contends that it acquired a property interest in the nature of a *profit a prendre*. The respondent contends that petitioner was a purchaser of gas after it had been produced and that it acquired no property interest which is subject to depletion.

Deductions for depletion are allowed by the statute " in respect of property." They contemplate a consumption and reduction of the mineral value of the land and are allowable to every person whose property right therein has been depleted by the extraction and sale of the product. *Lynch* v. *Alworth Stephens Co.*, 267 U. S. 364; *United States* v. *Ludey*, 274 U. S. 295; and *Burnet* v. *Thompson Oil & Gas Co.*, 283 U. S. 301. If the petitioner has a property interest in the mineral reserves of the land covered by the contracts, it is entitled to the deduction claimed.

While petitioner had the right to go upon the land to install necessary equipment, lay pipe lines, test the gas and had full right of ingress and egress, which rights constitute an interest in real estate, it had no property right or interest in the mineral reserves. It had

no equitable or legal ownership of the minerals in place, nor did it have the right to explore and drill for such minerals. It was a purchaser of gas if and when discovered and produced. The purchase price of the gas taken under each contract was a certain percentage of the finished product. The petitioner received the remainder in consideration of its services in treating the raw product. The lessor and lessee of the mineral land covered by the contracts are entitled to depletion on the full production of gas, based upon a market price therefor to be determined under the contract. The petitioner is not entitled to an allowance for depletion. Cf. *Arthur J. Coyle*, 17 B. T. A. 368.

The petitioner contends in the alternative that it is entitled to amortization of its casinghead gas contracts on the basis of their fair market value when acquired in exchange for stock. The respondent has held that the transactions by which petitioner acquired the assets and liabilities of the Signal Gasoline Company were in connection with a reorganization within the meaning of section 203 (b) of the applicable revenue act and has allowed amortization on the basis of cost to the Signal Gasoline Company in accordance with the provisions of section 204 (a) (7) of the act. The petitioner was organized to acquire the assets of the Signal Gasoline Company and it did acquire such assets, subject to the liabilities, in exchange for common stock. Immediately before and after the transaction the directors and officers of the two corporations were identical. All of the 400,000 shares of stock exchanged for the assets were held by the Signal Gasoline Company. We think the respondent's determination must be approved as to amortization of the casinghead gas contracts acquired from the Signal Gasoline Company.

The petitioner alleges that sections 204 (a) (7) of the Revenue Acts of 1924 and 1926 are unconstitutional, in so far as they deny to petitioner the fair market value of the contracts at the date of acquisition as a basis for amortization. We find no court decisions holding that such sections are invalid. In our opinion there is not sufficient doubt as to their constitutionality to warrant a discussion in this report. The statutory provisions should be applied.

The respondent has allowed amortization and computed profit upon sale of the contracts acquired from the Huntington Gasoline Company on the basis of cost, which he determined to be $45,547.51. He has allowed amortization on the contracts in a total amount of $22,611.89 and determined the basis for computing profit on the sale to be $23,935.62. There is no controversy as to the fact of sale or as to the selling price. The petitioner contends that cost of the contracts was their fair market value at the date acquired, which he alleges was $194,476.92. He contends that the contracts were ac-

quired in exchange for stock and that the value of the stock is the value of the assets received in exchange therefor.

There is nothing in the record to show what assets were acquired by petitioner from the Huntington Gasoline Company other than the casinghead gas contracts or what portion of the purchase price is allocable to the contracts. We do not know whether all of the cash was paid for assets other than the contracts and all of the 50,000 shares of stock was exchanged for contracts or whether part of the cash and part of the stock was paid for the contracts. The petitioner had assets other than those acquired from the Huntington Company and its stock had a value apart from the value of the assets received in exchange. On the evidence presented we are unable to say that the respondent's determination is incorrect. Compare memorandum opinion in *Atlas Rock Co.*, Docket No. 34951, of August 31, 1931.

*Decision will be entered for the respondent.*