**SIGNAL OIL & GAS CO. v. UNITED STATES.**

**No. 9813.**

Circuit Court of Appeals, Ninth Circuit.

Jan. 22, 1942.

MATHEWS, Circuit Judge, dissenting in part.

Melvin D. Wilson and Miller, Chevalier, Peeler & Wilson, all of Los Angeles, Cal., for appellant.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Edward First, Sp. Assts. to Atty. Gen., and William Fleet Palmer, U. S. Atty., and Armond Monroe Jewell, Asst. U. S. Atty., both of Los Angeles, Cal., for appellee.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a judgment against appellant Signal Oil and Gas Company, a Delaware corporation, transferee, after two intervening transfers, of all the assets of Signal Gasoline Company, a California corporation, hereafter called Company *A*, for appellant's transferee liability (1) for a deficiency in Company *A's* income taxes for the calendar year 1923 and (2) for such a deficiency for a portion of the year 1924, and (3) against appellant, a second transferee, of all the assets of Signal Gasoline Corporation, a California corporation, hereafter called Company *B*, for a deficiency in the income taxes of the latter corporation for a portion of the calendar year 1924. The United States brought a suit for the two deficiencies in the taxes of Company *A* and another for the deficiency of Company *B*. The two suits were consolidated and the single judgment ensued.

The first suit is based upon two different claimed returns and assessments and two separate proceedings before the Board of Tax Appeals, presenting differing facts regarding each. We consider separately the two claimed tax liabilities of the first suit and that of the second. It is a common factor in all three tax proceedings that the Commissioner did not assess the appellant, the parties having stipulated to that effect.[1] It is also common to all three proceedings and the suits based upon them that appellant admits the existence of the tax liabilities and relies on the statute of

---

[1] The two orders of the Board of Tax Appeals in the proceedings for Company B's 1923 and 1924 taxes are identical in form. The first reads as follows:

"Signal Gasoline Corporation, Petitioner, v. Commissioner of Internal Revenue, Respondent.  }Docket No. 41532

"Decision

"Pursuant to the determination of the Board, as set forth in its report promulgated February 16, 1932, it is

"Ordered and Decided: That the liability of the petitioner at law or in equity as a transferee in respect of the tax of the Signal Gasoline Company for the calendar year 1923 is $468.33, together with interest thereon as provided by law."

It is stipulated by the parties and found as a fact by the district court that in these Board proceedings "no substitution of parties was ever made, and no motion for such substitution was ever made by either of the parties."

Concerning the assessments, the district court, adopting the language of the stipulations, properly found the facts to be that "no assessment was ever made against the Signal Oil and Gas Company [appellant] for the 1923 and 1924 tax liabilities of the Signal Gasoline Compa-

ny [Company A]; that no assessment was ever made against the Signal Oil and Gas Company [appellant] for the tax liabilities due from the Signal Gasoline Corporation [Company B] for the year 1924;" and "That on September 10, 1932, the Commissioner of Internal Revenue duly assessed the Signal Gasoline Corporation, [Company B] as a transferee of the Signal Gasoline Company, [Company A] for the above described tax liabilities of the Signal Gasoline Company in the amounts and for the taxable periods as follows:

"For the taxable year 1923—$468.33, plus interest of $227.96.

"For the taxable period ended, September 11, 1924—$2,672.53, plus interest of $1,200.70."

The brief of the United States in this court states its position here to be that "an assessment was made on September 10, 1932, against the Signal Gasoline Corporation in the amount of $468.33 plus interest of $227.96 for the taxable year 1923 and $2,672.53 plus interest of $1,-200.70 for the period ended September 11, 1924." Assuming an assessment against appellant for Company A's 1923 and 1924 taxes could have been made by the Commissioner, we can find no ground for the suggestion with reference to these taxes, contrary to the stipulation of facts and contentions of both parties and the findings of the district court, that he had done so. Appellant and Company B are two separate tax entities.

**479**

limitations for the reversal of the judgment. It is also stipulated that at all pertinent times, appellant was the sole stockholder of B Company.

■ (1) *Tax liability of appellant for Company A's 1923 income.* On March 15, 1924, Company A made a return and on May 13, 1925, an amended return of its 1923 income and paid the tax there computed. At no time has the Commissioner assessed against Company A any deficiency for that year.[2]

On May 1, 1924, Company A transferred to Company B all its assets. On September 11, 1924, Company A was dissolved by a decree of the superior court of Los Angeles County, California.

On October 2, 1928, the Commissioner mailed a deficiency letter to Company B stating a claimed liability in Company B for a deficiency in Company A's 1923 taxes because of the transfer to Company B of Company A's assets, which Company A had made prior to its dissolution. On November 19, 1928, Company B docketed with the Board of Tax Appeals a petition for a redetermination of the 1923 deficiency proposed in the Commissioner's October 2nd letter.

Thereafter, on December 12, 1928, Company B was dissolved by a decree of the superior court of Los Angeles County, California. Pursuant to section 400 of the Civil Code of California, the Company B's directors were decreed trustees. Under that section the trustees were vested with power to administer the company's assets for Company B's creditors and stockholders.

■ Under the California law, as it then was, on the dissolution of Company B its assets, which included the former assets of Company A, were transferred to the appellant, the sole stockholder of Company B. Capuccio v. Caire, 189 Cal. 514, 518, 526, 209 P. 367. Until that transfer the stockholders had no title to the company's property. Kohl v. Lilienthal, 81 Cal. 378, 385, 20 P. 401, 22 P. 689, 6 L.R.A. 520. The appellant thus became the second assignee of the assets of Company A. Since appellant admits that Company A's deficiency exists, appellant as such second assignee is liable in this suit for the tax unless it is barred by the statute.

In the proceeding before the Board of Tax Appeals, after Company B became defunct, there was no amendment to the petition substituting the trustees of Company B as the party litigant there. On February 16, 1932, the Board made its order holding the defunct Company B liable for the deficiency and thereafter, on September 10, 1932, the Commissioner made an assessment against the defunct Company B for defunct Company A's 1923 tax. The complaint against appellant as transferee was filed on September 9, 1938.

■ Appellant claims that the purported assessment of September 10, 1932, is an invalid act since it is against a defunct California corporation dissolved by court order.[3] It appears to us that Congress intended to create assessment proceedings to determine a taxpayer's liability, though a deceased person or a corporation which has become defunct by final dissolution. Revenue Act 1926, §§ 281(d),[4] 280(c), 26 U.S.C.

---

[2] A purported assessment was made on July 3, 1931, over four years after the filing of the return, and hence invalid. § 277(a) (2), Revenue Act 1926, 26 U.S. C.A. Int.Rev.Acts, page 207. Its invalidity need not be pleaded. § 1106(a), Revenue Act of 1926, 26 U.S.C.A. Int. Rev.Acts, page 318. If valid, the suit upon it, begun September 9, 1938, over seven years later, was barred by the six-year limitation of § 278(d), 26 U.S.C.A. Int.Rev.Acts, page 209. United States v. Updike, considered infra under (3).

[3] Crossman v. Vivienda Water Co., 150 Cal. 575, 581, 89 P. 335, holding that a judgment against a corporation dissolved by court decree can be collaterally impeached; Lewellyn Iron Works v. Abbott-Kinney Co., 1916, 172 Cal. 210, 212, 155 P. 986, holding the same as to judgment after dissolution for non-payment of tax-

es. These cases to be distinguished from later decisions as to companies dissolved for non-payment of taxes which under a subsequent statute were permitted to revive as to which class as distinguished from dissolutions by court decree the courts hold the corporations are in a condition of "suspended animation." Hanson v. Choynski, 180 Cal. 275, 282, 180 P. 816; Rossi v. Caire, 186 Cal. 544, 549, 199 P. 1042; Ransomme-Crummey Co. v. Superior Court, 188 Cal. 393, 205 P. 446, 448; California Iron Yards Co. v. Commissioner, 9 Cir., 47 F.2d 514, 516.

[4] "(d) In the absence of any notice to the Commissioner under subdivision (a) or (b), notice under this title of a deficiency or other liability, if mailed to the taxpayer or other person subject to liability at his last known address, shall

A. Int.Rev.Acts, pages 214, 213.[5] Cf. Commissioner v. Renyx, 2 Cir., 66 F.2d 260, 261. Such an assessment is a determination that the deceased person or defunct corporation owed the tax, and we can see no reason why, in a proper proceeding, such an assessment cannot be made and both start the running of the statute and fix a liability as against the assets of the dissolved corporation in the hands of transferees.

Appellant claims that since no one appeared before the Board in the proceeding against Company B after its dissolution, that proceeding abated and hence there was no Board determination of the deficiency upon which the Commissioner could base his assessment. Standifer Construction Corporation v. Commissioner, 9 Cir., 78 F. 2d 285, 286. In this situation the appellant contends the right to sue on September 9, 1938, for the 1923 tax liability was foreclosed by the running of the four years from the date of Company A on March 15, 1924, provided in section 277(a) (2)[6] of the Revenue Act of 1926. Appellee contends that the assessment of Company B is valid and that it began its suit within the six years thereafter provided by section 278(d).[7]

It is unnecessary in our opinion to determine whether the assessment against Company B is valid because, assuming that it is, nevertheless section 277(a) (2) has run against suing appellant, the second transferee. Appellee strongly argues that appellant is a transferee of Company A's property within the meaning of section 278 (d), despite the fact that Company B was the intermediate transferee. It relies on United States v. Updike, 281 U.S. 489, 494, 50 S.Ct. 367, 74 L.Ed. 984.

We are unable to distinguish appellee's argument from the vigorous dissent of Mr. Justice Stone in United States v. Continental National Bank, 305 U.S. 398, 407, 59 S. Ct. 308, 310, 83 L.Ed. 249. Appellee cites no Supreme Court case overruling the Continental Bank case and we are constrained therefore to follow that decision. Since appellant, a second transferee, is not a "transferee of property of a taxpayer," Id. 305 U.S. 404, 59 S.Ct. 311, 83 L.Ed. 249, the six-year period of section 278(d) to sue the first transferee of the taxpayer after assessment of the taxpayer does not apply to appellant. The applicable provision of the Revenue Act of 1926 is section 277(a) (2), supra, providing that in the absence of assessment, here of either taxpayer or transferee, suits for such tax liability shall be begun within four years after the return was filed.[8]

Assuming the statute to run from the later amended return of May 13, 1925, the

---

be sufficient for the purposes of this title even if such taxpayer or other person is deceased, or is under a legal disability, or, in the case of a corporation, has terminated its existence."

[5] "(c) For the purposes of this section, if the taxpayer is deceased, or in the case of a corporation, has terminated its existence, the period of limitation for assessment against the taxpayer shall be the period that would be in effect had the death or termination of existence not occurred."

[6] "(a) Except as provided in section 278— * * *

"(2) The amount of income, excess-profits, and war-profits taxes imposed by the Revenue Act of 1921, and by such Act as amended, for the taxable year 1921 and succeeding taxable years, and the amount of income taxes imposed by the Revenue Act of 1924, shall be assessed within four years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period."

[7] "(d) Where the assessment of any income, excess-profits, or war-profits tax imposed by this title or by prior Act of Congress has been made (whether before or after the enactment of this Act) within the statutory period of limitation properly applicable thereto, such tax may be collected by distraint or by a proceeding in court (begun before or after the enactment of this Act), but only if begun (1) within six years after the assessment of the tax, or (2) prior to the expiration of any period for collection agreed upon in writing by the Commissioner and the taxpayer."

[8] We are unable to agree with the dictum on page 403, of 305 U.S., on page 310 of 59 S.Ct., 83 L.Ed. 249, of the Continental Bank case that to these four years must be added the one year of section 280(b) (1) providing for an additional year to assess transferees. The Continental Bank case holds, page 404 of 305 U.S., page 310 of 59 S.Ct., 83 L. Ed. 249, that section 280 respecting the assessment, etc. of transferees applies only to a "transferee of property of a taxpayer." Neither appellant nor the Continental Bank were such transferees within that decision.

period for suing the unassessed appellant expired March 15, 1929, over nine years before the complaint below was filed.

The judgment below must be reversed insofar as it holds appellant liable for Company A's taxes for the year 1923.

(2) *Appellant's liability for Company A's 1924 tax.* Company A had been dissolved by court decree on September 11, 1924. On March 16, 1925, a tentative return, and on May 13, 1925, a final return, were filed on behalf of the company. The latter reported the claimed taxable income earned from January 1, 1924, to September 11, 1924. The amount the return claimed to be due the Government was paid and the Commissioner's later deficiency letter to Company B, transferee, measured its deficiency on the amount of admitted liability of the return. Appellant contends, as for the 1923 taxes, that the return started the running of the four-year provisions of section 277 (a) (2).

Subsequent to Company B's dissolution on December 12, 1928, that is on December 28, 1929, the Commissioner sent to Company B, as transferee of Company A's assets, a letter computing Company A's deficiency in taxes for the year 1924. The letter was received by Company B's trustees who, as such trustees, on February 24, 1930, petitioned the Board of Tax Appeals in the name of the dissolved corporation for a redetermination of the tax. Subsequently the Board sustained the Commissioner's computed deficiency in its order of February 16, 1932. It found the amount of the deficiency as due from Company B, as transferee, and not from its, Company B's, trustees. Thereafter, on September 10, 1932, the Commissioner assessed the deficiency, not against Company B's trustees but against the defunct Company B. Appellee contends that it started the running of section 278 (d) and that its suit started on September 9, 1938, was within the six year period.

Appellant contends, as in the 1923 case considered above, that the assessment of the defunct corporation is no assessment at all. Since the trustees appeared in the Board proceeding we regard as valid the Board proceeding and the assessment of Company B as the first transferee of Company A's assets. Cf. McPherson v. Commissioner, 9 Cir., 54 F.2d 751. However, conceding its validity, it was not the assessment of Company A, the taxpayer.

Here, as with Company A's 1923 taxes, there was neither an assessment of the taxpayer nor of the appellant, the second transferee, and the statute started to run in favor of appellant at latest on the filing of the final return on May 13, 1925, and expired on May 13, 1929, four years later, long before the filing of the suit below.

The judgment must be reversed so far as concerns appellant's liability for Company A's 1924 taxes.

(3) *Appellant's liability for Company B's 1924 taxes.* On May 13, 1925, Company B filed its return for its 1924 taxes. On December 3, 1928, it executed a stipulation extending the assessment period for its 1924 taxes until December 31, 1929, and thereafter during the pendency of proceedings before the Board on a deficiency claimed by the Commissioner. On December 12, 1928, Company B was dissolved by court decree and the title to its assets thereby was transferred to appellant B Company's sole stockholder. Capuccio v. Caire, supra.

On December 28, 1929, the Commissioner addressed a letter to Company B disclosing a claimed deficiency in Company B's tax on its income for 1924. On February 24, 1930, the statutory trustees, in the name of the dissolved company, had docketed with the Board a petition for a redetermination of the tax. On March 15, 1932, the Board order determined the deficiency.

Thereafter the Commissioner, on October 1, 1932, assessed not the trustees, but the dissolved Company B, for the amount of the deficiency of Company B's taxes as determined by the Board. As before held, we regard this as a valid assessment of Company B, the taxpayer. Under section 278(d), supra, footnote 6, the United States had six years from the making of the assessment on October 1, 1932, to file the suit against appellant-transferee. That period had not expired when the suit below was filed. Hence the judgment below must be sustained so far as it concerns appellant's liability as transferee of Company B's assets for Company B's 1924 tax liability.

It is suggested that in the absence of an assessment against the transferee, though there be an assessment of the original taxpayer, section 277 (a) (2) limits to four years from the time of the taxpayer's return the period within which the transferee may be sued. With this we do not agree. The statement of United States v. Con-

tinental Bank & Trust Co., 305 U.S. 398, on page 403, 59 S.Ct. 308, on page 310, 83 L.Ed. 249, is to the contrary. Omitting the "not" which distinguishes that case from the present one in which there has been an assessment of the taxpayer, "This is * * * a suit upon assessment of deficiency against the taxpayer on account of the commissioner's determination as shown in his letter of December 6, 1924. The time for such a suit, six years after assessment, expired long before the commencement of this suit. § 278(d). United States v. Updike, 281 U.S. 489, 494, 50 S. Ct. 367, 368, 74 L.Ed. 984." The Updike case, so cited and approved by the Supreme Court, was a suit against a transferee after assessment of the taxpayer, but without an assessment of the transferee. The applicable statute was held to be section 278 (d) providing the six-year limitation after the assessment of the taxpayer and the suit against the unassessed transferee was held brought too late because commenced over seven years after the taxpayer's assessment. Here it was brought within the six years.

■ (4) *Identity of corporations and estoppel.* The appellee also contends that because appellant owned substantially all the stock of and had the same directors as Company *B* when it acquired Company *B's* assets, appellant and Company *B*, for purposes of the statute of limitations affecting appellee's timeliness of suing, should be deemed the same corporation. This contention is made regardless of the fact that each corporation is otherwise treated as a separate taxable entity.

If the Government's contention of the identity of the corporations be true, then no transfer occurred between them. One entity is not liable as taxpayer and the other entity as transferees. That is to say, if Company *B* had made a return for its 1924 taxes and no deficiency proceeding started, no suit could be maintained against appellant after four years from Company *B's* return. Act 1926, § 277 (a) (2). Yet, unless this absurdity is true, appellee's contention of identity of the corporations falls.

It is but a fanciful conjecture that these transfers of assets from Company *A* to Company *B*, and from Company *B* to its stockholders, and from its stockholders to appellant were intended not as a proper

series of business reorganizations, but as having in view tax evasions to be effected *by an anticipated future failure of the attorneys for the United States* to file its complaints within the statutory period of limitation.

The fact that appellant voluntarily acquired ownership of all Company *B's* stock has no more logical connection with the plea of the statute than Henry Duggan's voluntary acceptance of and failure to reject succession to the taxpayer's property under the will of an intermediate transferee had to do with his pleas of the statute in United States v. Continental National Bank, supra.

The case presents not even a colorable resemblance to the tax evasions of Higgins v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406. There the purposeful *utilization* of the control of a wholly owned corporation made the sale to it of the sole stockholder's property at a loss not allowable as a deduction under the tax law. Here, as seen, there was no rational connection between the stock ownership of the two corporations and the future possibility that the United States *might not* be diligent in filing a suit against the appellant-transferee for taxes.

■ Nor are there any facts supporting the Government's burden of proof of a plea of estoppel [9] preventing appellant from setting up the statute of limitations, because of the identity of directors and stock ownership. Instead of there being evidence to support the burden of proof of the Commissioner's lack of knowledge before the expiration of the statute that Company *A* had been dissolved, its liquidation was stated to the Commissioner in Company *A's* tax return, filed May 13, 1925. There is also no evidence to support the burden of proof that the Commissioner did not know of the dissolution of Company *B* and the common directors and stock ownership of the three companies, long before the statute of limitations expired. These are facts his field investigators are most likely to discover.

The decree is reversed as to appellant's liability for the taxes of Company *A*, Signal Gasoline Company, for 1923 and 1924. It is affirmed as to appellant's liability for Company *B*, Signal Gasoline Corporation's taxes for 1924.

---

9 Van Antwerp v. United States, 9 Cir., 92 F.2d 871, 875.

MATHEWS, Circuit Judge (dissenting in part).

On May 1, 1924, Signal Gasoline Company, a California corporation, hereafter called Company A, transferred all its assets to Signal Gasoline Corporation, a California corporation, hereafter called Company B. On September 11, 1924, Company A was dissolved.

Prior to December 1, 1928, all stock of Company B was acquired by appellant, Signal Oil & Gas Company, a Delaware corporation, which at all times thereafter was Company B's sole stockholder. On December 12, 1928, Company B was dissolved by a judgment of the Superior Court of Los Angeles County, California.[1] No other persons having been appointed,[2] Company B's directors thereupon became trustees of appellant (Company B's sole stockholder), with "full powers to settle the affairs of the corporation, collect and pay outstanding debts, sell the assets thereof * * * and distribute the proceeds of such sales and all other assets to [appellant]."[3] Appellant's trustees executed a formal transfer of Company B's assets to appellant on December 14, 1928. Actually, however, since appellant was Company B's sole stockholder, title to Company B's assets vested in appellant upon Company B's dissolution.[4]

On October 2, 1928, the Commissioner of Internal Revenue determined that there was a deficiency in respect of Company A's income taxes for 1923. On December 28, 1929, the Commissioner determined that there were deficiencies in respect of Company A's and Company B's income taxes for 1924. On September 9, 1938, appellee, the United States, began two suits against appellant—a suit (No. 1460) for the claimed amount of appellant's liability in respect of Company A's deficiencies for 1923 and 1924 and a suit (No. 1461) for the claimed amount of appellant's liability in respect of Company B's deficiency for 1924. Answering, appellant pleaded the statute of limitations. The suits were consolidated, trial was had and judgment was entered in favor of appellee.

From that judgment this appeal is prosecuted.

The question is whether the suits were barred by the statute of limitations. The suits involved income taxes for 1923, imposed by the Revenue Act of 1921, and income taxes for 1924, imposed by the Revenue Act of 1924. With respect to such taxes, the Revenue Act of 1926 prescribes the following periods of limitation:

For assessing such taxes and for beginning a suit without assessment for the collection thereof, four years after the return was filed;[5] for assessing the liability of a transferee of property of a taxpayer in respect of such taxes, five years after the return was filed;[6] for beginning a suit without assessment for the collection of the amount of such transferee's liability, three years after the return was filed;[7] for beginning a suit after timely assessment for the collection of such taxes or for the collection of the amount of such transferee's liability, six years after such assessment.[8] Any of these periods may be extended by agreement.[9] As to all except the last mentioned (six-year) period, the running of the statute may be suspended.[10]

Suit No. 1460.

Company A filed its return for 1923 on March 15, 1924. A tentative return for 1924 was filed for Company A on March 16, 1925. An amended return for 1923 and a final return for 1924 were filed for Company A on May 13, 1925.

On October 2, 1928, the Commissioner mailed to Company B a notice of Company A's deficiency for 1923 and of a proposed assessment of Company B's liability in respect of that deficiency. On November 19, 1928, Company B petitioned the Board of Tax Appeals for redetermination. The proceeding thus begun was prosecuted by Company B until December 12, 1928, when Company B was dissolved. Thereafter it was prosecuted by appellant, acting by its trustees, and, though prosecuted in the name of Company B, was, in effect, a proceeding by appellant for a determination of appellant's liability in respect of Company A's deficiency for 1923.

---

1 California Code of Civil Procedure, §§ 1227–1233.

2 Id., § 565.

3 California Civil Code, § 400, as amended by Stats.1921, p. 574.

4 Capuccio v. Caire, 189 Cal. 514, 523–526, 209 P. 367.

5 Revenue Act of 1926, § 277(a) (2).

6 Id., §§ 277(a) (2), 280(b) (1).

7 Id., §§ 277(a) (1), 280(a) (1).

8 Id., § 278(d).

9 Id., §§ 278(c), 278(d), 280(a) (1).

10 Id., §§ 277(b), 280(d).

On December 28, 1929, the Commissioner mailed to Company B a notice of Company A's deficiency for 1924 and of a proposed assessment of Company B's liability in respect of that deficiency. On February 24, 1930, appellant, by its trustees, petitioned the Board for redetermination. The petition purported to be Company B's, but was in fact appellant's petition. Though prosecuted in the name of Company B, the proceeding thus begun was, in effect, a proceeding by appellant for a determination of appellant's liability in respect of Company A's deficiency for 1924.

The proceedings were consolidated and heard together. On February 16, 1932, the Board rendered its decision sustaining the Commissioner as to both deficiencies.[11] There was no petition for review. Consequently, the decision became final on August 16, 1932.[12] On September 10, 1932, appellant's liability in respect of Company A's deficiencies for 1923 and 1924 was assessed. The assessment was, in form, an assessment against Company B, but was, in effect, an assessment against appellant.[13] Having, by its trustees, acted under the name of Company B in its proceedings before the Board, appellant could not object to being assessed as Company B, nor could appellant be heard to say that such an assessment was not an assessment against appellant.

Nor can it be said that the assessment was untimely. The running of the statute of limitations was suspended, as to each of the deficiencies, from the date the deficiency notice was mailed until 60 days after the Board's decision became final.[14] The assessment was made within that period. Appellant could not be heard, in the court below or here, to say that the period of limitation for assessing appellant had expired before the deficiency notice was mailed; for that was an issue which could have been raised, and (if raised at all)

should have been raised, in the proceedings before the Board. As to that issue, therefore, whether actually raised or not, the Board's decision was conclusive against appellant.

Suit No. 1460 was begun within six years after the assessment and hence was not barred.

### Suit No. 1461.

Company B filed its return for 1924 on May 13, 1925. On November 21, 1928—three weeks before Company B was dissolved—the Commissioner and Company B consented in writing[15] that the time for assessing any deficiency in respect of Company B's taxes for 1924 should be extended until December 31, 1929, and that if, before that date, a notice of deficiency was mailed to Company B, the time for assessing such deficiency should be further extended for the period during which the Commissioner was prohibited from making such assessment,[16] and for 60 days thereafter.[17]

On December 28, 1929—long after Company B was dissolved—the Commissioner mailed to Company B a notice of Company B's deficiency for 1924 and other deficiencies of Company B not here involved. On February 24, 1930, appellant, by its trustees, petitioned the Board for redetermination. The petition purported to be Company B's, but was in fact appellant's petition. Though prosecuted in the name of Company B, the proceeding thus begun was, in effect, a proceeding by appellant for a determination of appellant's liability in respect of Company B's deficiencies.

On March 14, 1932, the Board rendered its decision sustaining the Commissioner as to these deficiencies.[18] There was no petition to review that part of the decision which related to Company B's deficiency for 1924.[19] Consequently, that part of the decision became final on September 14,

---

[11] 25 B.T.A. 532.

[12] Revenue Act of 1926, § 1001(a).

[13] The parties have stipulated that on September 10, 1932, the Commissioner "purported to assess [Company B] as a transferee of [Company A], for the above described tax liabilities of [Company A]," and that "no assessment was ever made against [appellant] for the said 1923 and 1924 tax liabilities of [Company A];" which, I take it, simply means that the assessment of September 10, 1932, was, in form, an assessment against Company B and not against appellant. Whether or not it was, in legal effect, an assessment against appellant is, obviously, a question of law as to which this court is not bound by any stipulation.

[14] Revenue Act of 1926, §§ 277(b), 280 (d).

[15] Id., § 278(c).

[16] Id., § 274(a).

[17] Id., § 277(b).

[18] 25 B.T.A. 861.

[19] Other parts of the decision were reviewed in Signal Gasoline Corp. v. Commissioner, 9 Cir., 66 F.2d 886.

1932.[20] On October 1, 1932, appellant's liability in respect of Company B's deficiency for 1924 was assessed. The assessment was, in form, an assessment against Company B, but was, in effect, an assessment against appellant.[21] Here, as in suit No. 1460, appellant was estopped to deny that the assessment was an assessment against appellant. Also, as in suit No. 1460, appellant was precluded from questioning the timeliness of the assessment.

Suit No. 1461 was begun within six years after the assessment and hence was not barred.

The judgment should be affirmed.

---

[20] Revenue Act of 1926, § 1001(a).

[21] The parties have stipulated that on October 1, 1932, the Commissioner "purported to assess [Company B] for its tax deficiency for the calendar year 1924," and that "no assessment was ever made against [appellant] for the tax liabilities due from [Company B] for the year 1924;" which, I take it, simply means that the assessment of October 1, 1932, was, in form, an assessment against Company B and not against appellant. Whether or not it was, in legal effect, an assessment against appellant is, obviously, a question of law as to which this court is not bound by any stipulation.