COLUMBIA PICTURES INDUSTRIES, INC., SUCCESSOR BY MERGER TO SCREEN GEMS, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 2894–69, 2895–69. Filed January 11, 1971.

*Arthur Kalish* and *Peter J. Rothenberg*, for the petitioner.
*Aleksandrs V. Laurins* and *Robert L. Litt*, for the respondent.

DRENNEN, *Judge:* By notices of transferee liability dated March 26, 1969, respondent asserted that Screen Gems, Inc. (hereinafter Screen Gems), is liable, as transferee of the assets of Slate Pictures, Inc (hereinafter Slate), transferee of the assets of U.S. Television Film Co., Inc. (hereinafter USTV), transferee of the assets of Major Attractions, Inc. (hereinafter Major), and Arista Film Corp. (hereinafter Arista), for the following deficiencies in income tax of Major and Arista:

| Docket No. | Taxpayer | TYE— | Deficiency |
|---|---|---|---|
| 2894–69 | Major | July 31, 1953 | $75, 457. 99 |
|  |  | Mar. 23, 1954 | 115, 986. 24 |
| 2895–69 | Arista | Aug. 31, 1953 | 28, 046. 90 |
|  |  | Mar. 23, 1954 | 103, 033. 03 |

Petitioner is successor by merger to Screen Gems.

On June 16, 1969, petitioner filed its petition herein, and on December 1, 1969, respondent filed his answer thereto. On December 29, 1969, petitioner filed a motion to strike respondent's answer and for judgment on the pleadings. Oral argument was heard on the motion, after which the motion was taken under advisement to permit a thorough examination of the pleadings and the arguments of both parties. Both parties filed memorandum briefs and memorandum reply briefs in sup-

port of their respective contentions. On May 27, 1970, respondent filed an amended answer in each of these cases.

The only issue raised by petitioner's motion with which we are concerned is whether the statute of limitations bars assessment of transferee liability under section 311(a)(1)[1] of the Internal Revenue Code of 1939 [2] against Screen Gems.

FINDINGS OF FACT

The following facts have either been admitted by respondent in his answer or accepted as being true for purposes of petitioner's motion.

Petitioner is a corporation organized under the laws of the State of New York and, at the time it filed its petition herein, had its principal office at 711 Fifth Avenue, New York, N.Y. Petitioner is the successor by merger to Screen Gems.

Major, a New York corporation, filed its corporation income tax return for its taxable year ended July 31, 1953, with the district director for the Lower Manhattan District of New York on October 15. 1953, and filed its corporation income tax return for its taxable period ended March 23, 1954, with the district director for the Upper Manhattan District of New York on December 23, 1954.

Arista, a New York corporation, filed its corporation income tax return for its taxable year ended August 31, 1953, with the district director for the Lower Manhattan District of New York on December 15, 1953, and filed its corporation income tax return for its taxable period ended March 23, 1954, with the district director for the Upper Manhattan District of New York on December 23, 1954.

On March 23, 1954, USTV purchased all of the stock of Major and Arista, and, on the same day, liquidated Major and Arista, receiving, as a distribution in liquidation, all of the assets of Major and Arista, subject to any liabilities. Thereafter, on March 1, 1956, Slate purchased all of the stock of USTV.

On September 18, 1959, Screen Gems, a New York corporation, pur-

---

[1] SEC. 311. TRANSFERRED ASSETS.

(a) METHOD OF COLLECTION.—The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds) :

    (1) TRANSFEREES.—The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter.

[2] Since the tax liabilities of Major and Arista relate to the taxable years and taxable periods ended in 1953 and 1954, the Internal Revenue Code of 1939 is the applicable statute. Sec. 7851(a)(6)(A), I.R.C. 1954. All section references are to the Internal Revenue Code of 1939, unless otherwise noted.

chased all of the capital stock of Slate. Subsequently, on November 12, 1959, USTV and Slate were liquidated and their respective assets, subject to liabilities, were distributed to Screen Gems.

The statutory period of limitation for assessment of Major's tax liabilities for its fiscal year 1953 and its taxable period ended March 23, 1954, expired on October 15, 1956, and on December 23, 1957, respectively. The period of limitation for assessment of Arista's tax liabilities for its fiscal year 1953 and its taxable period ended March 23, 1954, expired on December 15, 1956, and on December 23, 1957, respectively. No assessment was made against Major or Arista within the statutory periods and no agreement to extend the period of limitation was sought or obtained from either taxpayer before the expiration of the applicable statutory period. Nor was any agreement to extend the statutory period of limitation for assessment of transferee liability sought or obtained from Screen Gems.

The period of limitation for assessment as to USTV as a transferee of Major would have expired on October 15, 1957, with regard to Major's taxable year ended July 31, 1953. However, on October 10, 1957, USTV and respondent executed an agreement in writing, extending the period of limitation relative to Major's taxable year ended July 31, 1953, to June 30, 1959. Subsequent agreements, timely executed, ultimately extended the period of limitation to June 30, 1963.

With regard to Arista's taxable year ended August 31, 1953, the period of limitation for assessment as to USTV as a transferee of Arista would have expired on December 15, 1957. However, on October 10, 1957, USTV and respondent executed an agreement in writing, extending the period of limitation relative to Arista's taxable year ended August 31, 1953, to June 30, 1959. Subsequent agreements, timely executed, ultimately extended the period of limitation to June 30, 1963.

As for Major's and Arista's taxable periods ended March 23, 1954, the period of limitation for assessment as to USTV as a transferee of Major and Arista would have expired on December 23, 1958. However, on December 4, 1958, USTV and respondent executed an agreement in writing, extending the period of limitation to June 30, 1960. Subsequent agreements, timely executed, ultimately extended the period of limitation to June 30, 1963.

On May 31, 1963, within the extended periods of limitation for assessment of transferee liability as to USTV, statutory notices of transferee liability were mailed to USTV with respect to Major's taxable year ended July 31, 1953, and its taxable period ended March 23, 1954. On the same date statutory notices of transferee liability were also mailed to USTV with respect to Arista's taxable year ended August 31, 1953, and its taxable period ended March 23, 1954.

On August 5, 1963, USTV, filed timely petitions with this Court for redetermination of the liability set forth by respondent in the statutory notices of transferee liability. On April 4, 1968, this Court entered a decision, by agreement of the parties, determining the liability of USTV as a transferee of the assets of Major and Arista.

On May 3, 1968, the transferee liabilities of USTV as transferee of Major and Arista, as determined by this Court, were assessed.

On March 26, 1969, respondent mailed statutory notices of transferee liability to Screen Gems, asserting that Screen Gems was liable as transferee of a transferee for the deficiencies in tax of Major and Arista for the four taxable periods in question. Petitioner, successor by merger to Screen Gems, filed these petitions and motions in response to the statutory notices of transferee liability.

OPINION

There is no dispute as to the facts, the only question being whether section 311(b)(2) bars the assessment of the liability of Screen Gems. Petitioner's motions to strike and for judgment on the pleadings therefore raise only a question of law.

Section 275(a), applicable to these cases, provides, "The amount of income taxes imposed by this chapter shall be assessed within three years after the return was filed." Section 276(b) provides for extension of this period of limitation beyond the prescribed period where "both the Commissioner and the taxpayer have consented in writing to its assessment after such time."

Pursuant to section 311(b)(1) and (2), the "period of limitation for assessment" of the "liability of a transferee" is, in "the case of * * * an initial transferee * * * within one year after the expiration of the period of limitation for assessment against the taxpayer" and, in "the case of * * * a transferee of a transferee * * * within one year after the expiration of the period of limitation for assessment against the preceding transferee, but only if within three years after the expiration of the period of limitation for assessment against the taxpayer." Section 311(b)(4) provides that the period of limitation for assessment of the liability of a transferee may be extended by agreement in writing between the Commissioner and the transferee.[3]

---

[3] SEC. 311. TRANSFERRED ASSETS.

(b) PERIOD OF LIMITATION.—The period of limitation for assessment of any such liability of a transferee or fiduciary shall be as follows:

(1) In the case of the liability of an initial transferee of the property of the taxpayer,—within one year after the expiration of the period of limitation for assessment against the taxpayer;

(2) In the case of the liability of a transferee of a transferee of the property of the taxpayer,—within one year after the expiration of the period of limitation for assessment against the preceding transferee, but only if within three years after the expiration of the period of limitation for assessment against the taxpayer;—

In the present cases, Major and Arista are the taxpayers, USTV is the initial transferee and Screen Gems is a transferee of a transferee. Petitioner's basic argument is that pursuant to section 275(a) the periods of limitation for assessment of the liabilities of the taxpayers for their taxable periods ending in 1953 and 1954 expired in 1956 and 1957, respectively; no assessments were made against the taxpayers within the statutory periods and no agreements to extend the periods of limitation were sought or obtained from the taxpayers; nor was any agreement to extend the period of limitation sought or obtained from Screen Gems; hence, since section 311(b)(2) provides that the liability of a transferee of a transferee may be assessed "only if within three years after the expiration of the period of limitation for assessment against the taxpayer," the period of limitation for assessment of the liability of Screen Gems as transferee of a transferee expired no later than October 15, 1959 (in the case of Major's taxable year ended July 31, 1953), December 15, 1959 (in the case of Arista's taxable year ended August 31, 1953), and December 23, 1960 (in the case of the taxable periods of both Major and Arista ended March 23, 1954); the statutory notice of transferee liability was not issued to Screen Gems until March 26, 1969, and therefore assessment of the liability is barred by the statute of limitations.

Petitioner's argument thus far is not only consonant with the literal wording of the statute, but also finds support in the legislative history of the statute. When the transferee assessment procedure was first established by the Revenue Act of 1926, it provided for a single period of limitation for all transferees—one year after the expiration of the period of limitation for assessment against the taxpayer.[4] Two years later, in the Revenue Act of 1928, Congress provided a longer period of limitation for assessment of the liability of a transferee of a transferee.[5] As initially passed by the House, the 1928 Act provided that the period of limitation for each succeeding transferee would expire "one year after the expiration of the period of limitation for assessment against the preceding transferee." The Senate,

---

except that if before the expiration of the period of limitation for the assessment of the liability of the transferee, a court proceeding for the collection of the tax or liability in respect thereof has been begun against the taxpayer or last preceding transferee, respectively,—then the period of limitation for assessment of the liability of the transferee shall expire one year after the return of execution in the court proceeding.

 \*    \*    \*    \*    \*    \*    \*

(4) Where before the expiration of the time prescribed in paragraph (1), (2), \* \* \* for the assessment of the liability, both the Commissioner and the transferee or fiduciary have consented in writing to its assessment after such time, the liability may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

[4] Revenue Act of 1926, sec. 280(b)(1).
[5] Revenue Act of 1928, sec. 311(b)(2).

however, amended this provision to add the overall limitation that transferee liability may, in any event, be assessed "only if within three years after the expiration of the period of limitation for assessment against the taxpayer." This amendment was adopted by the conference committee, was embodied in the 1928 Act, and has been the law ever since.

The Senate Finance Committee explained the amendment as follows:

Section 311(b)(2) of the House bill provides, with specific exceptions, that the period for assessment in such case shall be one year after the expiration of the period of limitation for assessment against the preceding transferee. It seemed to the committee that this would unduly prolong litigation and that there should be a time when the transferee may know that he is no longer liable to be proceeded against. A committee amendment therefore provides that in all cases the tax must be assessed within three years after the expiration of the period of limitation for assessment against the taxpayer. [S. Rept. No. 960, 70th Cong., 1st Sess., p. 32 (1928), 1939–1 C.B. (Part 2) 431.]

It thus seems clear that the 3-year limitation, consciously made dependent on the expiration of the period of limitation for assessment against the original taxpayer, was inserted in the statute, after careful consideration, for the specific purpose of providing transferees with immunity from liability within a reasonable time.

Respondent does not dispute the fact that the 3-year period limitation would have normally expired on the above dates, nor does he dispute the fact that the notices of transferee liability were not mailed to Screen Gems prior to those dates. However, respondent contends that section 311(b)(2) is subject to a clause of exception and also to other provisions which suspend and/or extend the 3-year period of limitation and that the notices of transferee liability were mailed to Screen Gems within the period of limitation specified in the clause of exception or within the period of limitation as extended.

Respondent's first contention is premised on the fact that section 311(b)(2) is immediately followed by, and subject to, a clause of exception enacted contemporaneously with the enactment of section 311(b)(2). That clause provides:

except that if before the expiration of the period of limitation for the assessment of the liability of the transferee, a court proceeding for the collection of the tax or liability in respect thereof has been begun against the taxpayer or last preceding transferee, respectively,—then the period of limitation for assessment of the liability of the transferee shall expire one year after the return of execution in the court proceeding.

Respondent maintains that the clause of exception, read in conjunction with section 311(b)(4), which provides that where the Commissioner and the transferee have timely consented in writing to assessment of the transferee liability after the normal time "the lia-

bility may be assessed at any time prior to the expiration of the period agreed upon," controls the present situation. Respondent contends that when USTV filed petitions in this Court within the period of limitation, as extended by consents, Court proceedings for the "collection of the tax or liability in respect thereof" were begun, and that inasmuch as the notice of transferee liability was issued to Screen Gems within 1 year after this Court entered decisions in those cases, the notice was within the period of limitation for assessment of the liability because it was issued within "one year after the return of execution in the court proceeding."

We agree with petitioner that respondent's reliance on the clause of exception following section 311(b)(2) is misplaced and is untenable, for several reasons.

First it is clear that the Tax Court proceeding instituted by USTV for a redetermination of its transferee liability was not "a court proceeding for the collection of the tax or liability in respect thereof" "begun against" USTV within the meaning of section 311 (b) (2). Not only is the distinction between a court proceeding for collection of the tax or liability in respect thereof *against* the taxpayer or a transferee and a Tax Court proceeding filed *by* the taxpayer or a transferee for redetermination of an alleged tax or transferee liability fundamental and universally understood, but an examination of the history of the clause of exception relied upon by respondent bears out that Congress was fully aware of the difference in the two proceedings and had reference to the classic court proceeding for collection, in which the Government sues for a tax after it has made a timely assessment of the tax, when it chose the words in the exception clause. See S. Rept. No. 52, 69th Cong., 1st Sess., p. 29 (1926), 1939-1 C.B. (Part 2) 354; S. Rept. No. 960, 70th Cong., 1st Sess., p. 39 (1928), 1939-1 C.B. (Part 2) 436.

Furthermore the language used in the exception clause fixing the period of limitation also confirms that the court proceeding intended is the typical court proceeding for collection of a tax. It states that the period of limitation shall expire "one year after the return of execution in the court proceeding." There is no execution of a decision entered in a proceeding in the Tax Court. The amount of the deficiency determined in a proceeding in the Tax Court must first be assessed by the Commissioner and, if not paid, the Government must proceed in the U.S. District Courts for collection of the tax.

Respondent relies on the fact that the first part of the exception clause is in the disjunctive—"a court proceeding for the collection of the tax *or liability in respect thereof*." He argues that since the phrase is in the disjunctive it should be read as referring to either

"a court proceeding for the collection of the tax" or to "a court proceeding" *determining* "liability in respect * * * [of the tax]." To be sure, the phrase is in the disjunctive, but we think that if the phrase is to be dissected, a correct interpolation would be "a court proceeding for the collection of the tax" or "a court proceeding for the collection of the liability in respect thereof." To interpret it as respondent does requires reading into the statutory language the word "determining" which is not there, and we do not believe either the history of the clause or its purpose justifies such. The clause is an exception to provisions fixing the period of limitation for assessment of the liability of both transferees and transferees of transferees; the first being based on a proceeding for collection of the tax from the taxpayer, and the second being based on a proceeding for collection of liability with respect to the tax from the initial transferee.

Even if we were to accept respondent's argument that the filing of a petition in the Tax Court by USTV was the initiation of a court proceeding for collection within the meaning of the exception clause in section 311(b)(2), which we do not, respondent's argument still founders on the passage of time. The exception clause provides that only "if before the expiration of the period of limitation for the assessment of the liability of the transferee" a court proceeding is begun, etc. The petition was filed in the Tax Court by USTV in 1963, which was long after the 3-year period of limitation for assessment of Screen Gems had run, that being in 1959 and 1960 as above described. So if the period of limitation of the transferee referred to in the exception clause is that of Screen Gems, the Tax Court proceeding was filed too late, and the exception clause would be inapplicable. However, respondent argues that the period of limitation referred to is that of the original transferee, USTV here, and inasmuch as the Tax Court proceeding was begun prior to the expiration of the period of limitation for USTV, the first requirement of the exception clause was met.

We cannot agree with respondent's interpretation of the first phrase of the exception clause, because it is illogical. The purpose of the exception clause is to suspend the running of a period of limitation that is still open, not to reopen one that is closed. The clause requires that a court proceeding be begun "against the *taxpayer* or *last preceding transferee*" "before the expiration of the period of limitation for the assessment of the liability of the *transferee*." (Emphasis added.) We think it abundantly clear that the word "transferee" in the latter clause can only be construed to refer to someone other than the taxpayer or the last preceding transferee. Thus, the word "transferee" refers to a transferee subsequent in time to the transferee involved in the court proceeding. Here USTV was the transferee involved in

the Tax Court proceeding; Screen Gems was the subsequent transferee. The court proceeding was not begun within the period of limitation for Screen Gems, so the exception clause does not apply.

Respondent attempts to support his interpretation of the exception clause with a passage from the regulations under the 1939 Code which requires simply that a court proceeding against the taxpayer or last succeeding transferee has been begun "within the period of limitation for the bringing of such proceeding." Sec. 39.311–1(c)(3), Regs. 118. This provision of the regulation leaves out the reference to the period of limitation "of the transferee" as required by the statute, and is somewhat ambiguous. This is borne out by the fact that when the Commissioner issued his regulations relative to section 6901(c) of the 1954 Code, which contains a provision virtually identical to the exception clause in section 311(b)(2), he was more explicit. Section 301.6901–1 (c)(3), Proced. and Admin. Regs., states that:

If, before the expiration of the period specified in subparagraph (1) [for assessment against the initial transferee] or subparagraph (2) [for assessment against a transferee of a transferee] of this paragraph (whichever is applicable), a court proceeding against the taxpayer or last preceding transferee for the collection of the tax or liability in respect thereof, respectively, has been begun within the period of limitation for the commencement of such proceeding, then [the period for assessment against the initial transferee or transferee of a transferee is] within one year after the return of execution in such proceeding.

We think the latter regulation is a more complete interpretation of the statute.[6]

Respondent's second argument is based on section 311(b)(4), which provides that, "Where before the expiration of the time prescribed * * * both the Commissioner and the transferee * * * have consented in writing to its assessment after such time, the liability may be assessed at any time prior to the expiration of the period agreed upon." Respondent contends that, pursuant to this provision, the consent to extend the period of limitation which USTV executed as initial transferee operated to extend the period of limitation for assessment of the liability of any and all subsequent transferees, regardless of the 3-year

---

[6] Perhaps the language used by Congress in adding the exception clause when it expanded sec. 311(b)(2) in the 1928 Act was couched in terms of a "court proceeding" "against" a taxpayer or transferee "for collection of the tax or liability in respect thereof" because proceedings in the Board of Tax Appeals (now the Tax Court) for redetermination of a deficiency were rather new at that time and theretofore the only means of collecting transferee liability had been by means of a proceeding in the U.S. District Court for collection of the liability, but it is quite clear to us that Congress had a collection proceeding in mind when it enacted the exception clause. If in fact the exception clause was intended to include a proceeding in the Tax Court for redetermination of a deficiency, it seems strange that the language would not have been changed when the internal revenue laws were first codified in 1939 and completely revised in 1954.

period of limitation prescribed by section 311(b)(2). Again we must disagree with respondent.

The execution of an agreement by an initial transferee to extend its own period of assessment will, of course, extend the period of limitation for assessment against a succeeding transferee to the extent that the latter's period of limitation is determined by the expiration of the period for assessment against the initial transferee. But section 311(b)(2) provides not only that an assessment against a succeeding transferee must be made within 1 year after expiration of the period of limitation for assessment against the preceding transferee; it also requires that such assessment be made within 3 years after the expiration of the period of limitation for assessment against the taxpayer. Respondent's own regulation makes this point clear. Section 39.311–1(c)(2) states that the period of limitation for assessment of the liability of a transferee of a transferee is "one year after the expiration of the period of limitation for assessment against the preceding transferee, or three years after the expiration of the period of limitation for assessment against the taxpayer, *whichever of the two periods (the 1-year period or the 3-year period) first expires.*" (Emphasis added.) If the initial transferee agrees to extend the period for assessment of his own liability, he will thereby postpone the date which marks the beginning of the additional 1-year period for assessment against the next succeeding transferee. But such assessment must still be made within 3 years after the expiration of the period for assessment against the taxpayer. And that period is not affected by a consent executed by the initial transferee.

The point is well illustrated by the present cases. The periods for assessment against the taxpayers, Major and Arista, expired 3 years after their respective returns were filed. The periods for assessment against transferees would normally have expired 1 year later in the case of USTV, 2 years later in the case of Slate, and 3 years later in the case of Screen Gems. The extension agreements executed by USTV extended the period for assessment against Slate but not beyond the expiration of 3 years following the expiration of the period for assessing Major and Arista. The period for assessment against Screen Gems was, of course, 3 years after the expiration of the period for assessing Major and Arista, regardless of USTV's waivers.

It is true that there are a number of court decisions to the effect that the taxpayer (in this case Major and Arista) can bind all succeeding transferees by a timely extension of the period of limitation.[7] But as

---

[7] E.g., *Anne Gatto*, 20 T.C. 830 (1953); *Marva Trotter Barrow Spaulding*, 27 T.C. 479 (1956), affd. 255 F. 2d 759 (C.A. 7, 1958) sub nom. *First Nat. Bank of Chicago* v. *Commissioner*.

respondent concedes, these decisions are not in point, since the period of limitation for assessment against any transferee is in all events dependent on the period of limitation for assessment against the taxpayer.

These decisions are not based on the proposition that one party's waiver can bind another. The principle involved is simply that where a period of limitation is measured in terms of the occurrence of a specified event, the postponement of that event will necessarily extend the period of limitation. The execution of an extension agreement by the taxpayer postpones the event which triggers the running of the statute of limitations against the transferees; it is not a waiver of the transferees' rights. Accordingly, these decisions provide no support for respondent's contention that an extension agreement by an initial transferee (USTV) will, regardless of the other relevant provisions of the statute, bind a succeeding transferee (Screen Gems).[8]

Section 311(b)(4) was added by the Revenue Act of 1938. Respondent points to a statement in the House committee report to the 1938 Act to the effect that, "This subsection of the bill specifically provides, in paragraph (4), the authority for waivers extending the period of limitation on assessment in the same manner and with the same effect as is the case under section 276(b) relating to waivers filed by taxpayers themselves. However, at the very outset of its discussion of section 311(b)(4), the House committee states, "Under existing law there is no express authority granted for the Commissioner and a transferee * * * to extend the period of limitation for assessment of income tax against *such transferee* * * *."[9] (Emphasis added.) Thus, it seems clear that the first statement was to point out that, under the new provisions of section 311(b)(4), a transferee could execute a waiver extending the period of limitation for assessment of his transferee liability in the same manner as provided in the case of a taxpayer charged with liability for a tax, and that the waiver will have the same effect on that transferee as a waiver signed by the taxpayer would have on that taxpayer. We cannot interpret the committee report to imply that a waiver executed by the initial transferee would have the same effect with respect to a subsequent transferee as would a waiver executed by the taxpayer. It is hardly likely that Congress intended to give a transferee the power to extend the limitation periods of subsequent transferees except as such periods were determined solely by

[8] We note that Screen Gems acquired all the stock of, and liquidated USTV in 1959, prior to the executions of waivers extending the time for assessment of USTV's liability to 1963 and prior to the time USTV filed a petition in the Tax Court. so presumably Screen Gems was acting for USTV in these actions. Respondent does not argue that these were the acts of Screen Gems and consequently he was misled. Compare *Burnett* v. *New York Central R. Co.,* 380 U.S. 424 (1965).

[9] H. Rept. No. 1860, 75th Cong., 3d Sess., p. 49 (1938), 1939–1 C.B. (Part 2) 763–764.

the expiration of the period for assessment against the transferee executing the waiver and were thus extended by operation of law.

Thus, the effect of the waivers signed by USTV was to extend the period of limitation for assessment against USTV to June 30, 1963. Also since the notices of transferee liability were mailed to USTV on May 31, 1963, and USTV thereafter filed timely petitions in this Court, under section 311(d) the 1-year period of limitation of section 311 (b)(2) did not begin to run until 90 days after the decisions of this Court as to USTV became final. The waivers signed by USTV did not, however, have the effect of extending the 3-year period of limitation of section 311(b)(2) and therefore that period expired as to Screen Gems in each case well before the notices of transferee liability were mailed to USTV.

We recognize, as respondent suggests, that our interpretation of section 311(b) above, makes it possible for an initial transferee to transfer its own and the original taxpayer's assets to subsequent transferees after the statute of limitations has run against the subsequent transferees. However, there are procedures available to respondent to protect against this, even though they may appear to be burdensome and to interfere with the "mature and deliberate determination of the true liability" in transferee cases. One such procedure would be to either assess the deficiency against the original taxpayer within the statutory period or to obtain waivers from the original taxpayer. While this may seem to be wasted effort when the taxpayer no longer has assets with which to pay the tax and in all likelihood the defense will be made by a transferee, nevertheless it is the taxpayer's tax liability that must be litigated in most transferee cases. The fundamental purpose of a statute of limitations is to prevent the litigation of stale claims at a time when the basic facts may have become obscured by the passage of time.[10] This fundamental concept underlying statutes of limitations is particularly apropos with regard to the liability of transferees who may be called upon to litigate the tax liability of an unrelated party after the facts and evidence which gave rise to the purported liability have become stale and obscure. It appears from the committee report quoted above [11] that Congress recognized this concept when it enacted section 311(b)(2). If it intended, by the exception clause, to permit the initial transferee to extend the 3-year period, it should so provide in clear terms.

For the reasons given we hold that section 311(b)(2) bars the assess-

---

[10] See *Toussie* v. *United States,* 397 U.S. 112, wherein this concept was recently reiterated by the Supreme Court. While this was a criminal case, the concept is nevertheless apposite here.

[11] S. Rept. No. 960, 70th Cong., 1st Sess., p. 32 (1928), 1939–1 C.B. (Part 2) 431.

ment of transferee liability against Screen Gems. Accordingly, petitioner's motions for judgment on the pleadings are granted.

*Decisions will be entered for the petitioner.*