TYMKOVICH, Circuit Judge,
dissenting.
While I agree with much of the panel’s reasoning, I part company on the result required by the Tax Code. Because I conclude the Tax Code bars the government’s untimely proceeding against Holmes, I would reverse.
I.
A.
In this case, we are asked to identify the statute of limitations for when the IRS may bring suit to collect taxes from an unassessed transferee. No one statute in the Tax Code specifically answers this question. In trying to find the correct rule, the IRS and the majority rely on a statute providing the period of limitations for collecting from an assessed taxpayer. See 26 U.S.C. § 6502.[1] But James Holmes was never assessed. And, in fact, the IRS and majority’s reading misses some of the relevant statutory context. Cf. Marx v. Gen. Revenue Corp., — U.S. -, 133 S.Ct. 1166, 1175-78, 185 L.Ed.2d 242 (2013) (finding the applicable rule by analyzing the statutory context). In my view, that context requires us to consider two different statutes: one providing that the IRS must collect from transferees in the same way as it collects from a taxpayer, see 26 U.S.C. § 6901(a),[2] and another pro *1238 viding that the IRS cannot collect in court from an unassessed taxpayer after the period for assessment has passed, see id. § 6501(a).[3] The question in this case is whether § 6501(a) — the rule against collecting from one whom the IRS has not assessed after the assessment period has passed — also applies to an unassessed transferee like Holmes. In light of § 6901(a)’s directive that transferees are to be treated as a taxpayer is treated, I think so.
It should go without saying that “[t]he Tax Code is never a walk in the park,” Seven-Sky v. Holder, 661 F.3d 1, 23 (D.C.Cir.2011) (Kavanaugh, J., dissenting), and this case is no exception. So to facilitate my discussion of the Tax Code, I briefly summarize how transferee tax liability works and how the Tax Code resolves this case. Then I recite the facts and procedural history before turning to a detailed analysis of this case’s question and the IRS’s arguments.
B.
The Tax Code permits the IRS to collect a taxpayer’s tax liability from other individuals or entities who receive asset transfers from the taxpayer. The Code directs the IRS to collect tax liability from the “transferee ” — such as a shareholder who receives a cash distribution — according to the same rules under which it collects from the original taxpayer, the “transferor”— such as the corporation that made the cash distribution to the shareholder. See 26 U.S.C. § 6901(a).[4] This principle applies to all three stages of tax collection: assessment,[5] payment, and collection. See id.
To be sure, the IRS may collect taxes in court instead of through the assessment process. See Goldston v. United States (In re Goldston), 104 F.3d 1198, 1201 (10th Cir.1997); see also Leighton v. United States, 289 U.S. 506, 53 S.Ct. 719, 77 L.Ed. 1350 (1933) (holding the same is true with transferees). But the Tax Code bars the IRS from bringing such a suit unless the IRS does so before the period for assessment expires. See 26 U.S.C. § 6501(a). And the Tax Code does not alter that rule with respect to transferees. Therefore, unless the IRS assesses a transferee, it cannot bring suit to collect the transferee tax liability after the period for assessing that transferee has passed. See United States v. Cont’l Nat’l Bank & Trust Co., 305 U.S. 398, 404-05, 59 S.Ct. 308, 83 L.Ed. 249 (1939).
In this case, the transferee, Holmes, was not assessed for his transferee tax liability, and the IRS did not bring suit against him until after the period for assessing him as a transferee had expired. Accordingly, the suit was untimely.
C.
I now turn to the factual background and procedural history relevant to my *1239 conclusion. Certain corporations can elect to be taxed, for federal tax purposes, either as pass-through entities (ie., “S Corporations”) or as separately taxed entities (ie., “C Corporations”).[6] Between its incorporation in 1977 and its dissolution in 2005, Colorado Gas Compression, Inc. (CGCI) lawfully switched between filing as an S Corporation and filing as a C Corporation at various points in its history. In 1994, 1995, and 1996, CGCI — then an S Corporation — sold appreciated assets it had acquired in years when it was a C Corporation. Based on the advice of its tax attorney, CGCI paid taxes on those sales according to its status at the time of the tax — ie., as an S Corporation.
The IRS thought, however, that CGCI should have paid taxes on the asset sales according to its status at the time of asset acquisition — ie., as a C Corporation. Because the difference meant that. CGCI owed back taxes, the IRS sent CGCI a notice of deficiency in 1998. CGCI disputed the deficiency, and the two parties litigated the matter in the Tax Court. Finally, in 2001, the court decided in the IRS’s favor and entered judgment against CGCI for $805,557 in back taxes owed. The IRS then assessed CGCI for that amount.
CGCI appealed the Tax Court’s decision, and we reversed and remanded for a new calculation of liability. Colo. Gas Compression, Inc. v. Comm’r, 366 F.3d 863 (10th Cir.2004). On remand, the Tax Court re-calculated CGCI’s liability to be $923,049. The IRS then assessed CGCI in 2005 for the difference, but CGCI was unable to make any payment.
In 2008, the IRS filed suit against Holmes because of transfers he had received from CGCI. From 1995 to 1997, CGCI made annual distributions to Holmes, its sole shareholder, totaling about $3 million. Then from 1998 to 2002, after receiving its notice of tax deficiency in 1998, CGCI made another series of transfers to Holmes totaling $670,000. Based on these transfers from 1995 to 2002, the IRS in 2008 asserted a Colorado cause of action for transferee liability against Holmes, demanding over $4.9 million in transferee tax liability. That amount included interest from the original tax due dates in 1995, 1996, and 1997, respectively.
At the district court, Holmes argued the IRS’s suit was untimely both under Colorado law and under the Tax Code’s period of limitations for transferee liability, outlined in 26 U.S.C. § 6901(c). The district court rejected both arguments. It found the state statute of limitations inapplicable by virtue of the Supreme Court’s decision in United States v. Summerlin, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940), which held that state statutes of limitations, do not apply to the federal government when it asserts a right derived from federal law in its sovereign capacity. And the court found the Tax Code’s statute of limitations inapplicable because the IRS was not asserting § 6901 as a cause of action. Consequently, the court entered judgment against Holmes for just over $2.5 million.
II.
A.
The question raised here is, When may the IRS collect a corporation’s tax from an unassessed transferee like Holmes? On appeal, the IRS for the first time cites 26 U.S.C. § 6502 as the relevant statute of *1240 limitations. Section 6502 of the Tax Code provides the general statute of limitations for collecting tax liabilities, limiting the IRS to collections “within 10 years after the assessment of the tax.” 26 U.S.C. § 6502(a). Thus, the statute requires a “tax” followed by an “assessment,” with an outer limit of “10 years” after the assessment in which to commence collection proceedings against the taxpayer.
The IRS argues that the Tax Code authorizes it to collect from an unassessed transferee like Holmes at any point during the ten-year period following its assessment of the transferor, CGCI, which occurred on January 23, 2002.[7] For this argument, the IRS relies on the Supreme Court’s decision in United States v. Updike, 281 U.S. 489, 50 S.Ct. 367, 74 L.Ed. 984 (1930). In Updike, the government argued that a suit against transferees to collect the transferor’s tax liability was not a proceeding to collect a tax. Id. at 492, 50 S.Ct. 367. The Court rejected that argument in light of § 280 (now § 6901) of the Tax Code, which directed that the rules for assessment and collection applicable to the transferor also apply to transferees. See id. at 492-93, 50 S.Ct. 367. Thus, the Court found the IRS time-barred from bringing suit against the transferees where the collection period for the original taxpayer-transferor had long expired. Id. at 494-95, 50 S.Ct. 367.
Based on Updike, the IRS now claims it has ten years from the date of assessing CGCI to bring suit against Holmes, even though Holmes was never separately assessed. The majority agrees, but I think they are wrong.
My reading of the Tax Code does not support the IRS’s conclusion. Section 6901(a) tells us that a transferee’s tax liability “shall ... be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred.” 26 U.S.C. § 6901(a). I interpret this general rule to mean that transferee liability is to be assessed, paid, and collected under the same rules that apply to assessing, paying, and collecting the ordinary, pre-transfer tax liability. See Commit v. Stern, 357 U.S. 39, 43, 78 S.Ct. 1047, 2 L.Ed.2d 1126 (1958) (noting that § 311, now § 6901, “was designed ‘to provide for the enforcement of [transferee] liability ... by the procedure provided in the [Tax Code] for the enforcement of tax deficiencies’ ” (quoting S.Rep. No. 69-52, at 30 (1926))); see also Hulbutd v. Comm’r, 296 U.S. 300, 306, 56 S.Ct. 197, 80 L.Ed. 242 (1935) (“If some one [sic] else was to be charged, there would be need of a new assessment.... ” (citing § 280, now § 6901) (emphasis added)).
The only exceptions to this general rule are those “hereinafter in [§ 6901] provided.” 26 U.S.C. § 6901(a). And the only exception relevant here is found in § 6901(c)(1), which extends the “period of limitations for assessment of’ transferee liability to “within 1 year after the expiration of the period of limitation for assessment against the transferor.”[8] Otherwise, § 6901 contains no unique period of limitations for collecting in court from an unas *1241 sessed transferee, so to determine that period, we must look to the “same provisions and limitations” of the Tax Code that supply the general rule for collecting an unassessed tax liability after the time for assessment has expired. See id. § 6901(a).
The applicable provision, 26 U.S.C. § 6501(a), leads in the opposite direction of the majority’s analysis. The rule for collection without assessment is: “[T]he amount of any tax imposed by this title shall be assessed ..., and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period. ” Id. (emphasis added). Here, the IRS has not assessed the transferee Holmes, and the “period” for when Holmes’s transferee tax liability “shall be assessed” has passed. Thus, § 6501(a) does not permit the IRS to commence collection proceedings.
This straightforward application of the Tax Code’s text is not novel. The Supreme Court reached the same conclusion in Continental. In that case, the IRS had assessed the taxpayer and the initial transferee, but it had not assessed the subsequent transferees. See 305 U.S. at 400, 404, 59 S.Ct. 308. The IRS argued that the period to collect from the assessed initial transferee — a period dictated by a precursor to § 6502(a), the statute the IRS relies upon here — should also apply to the unassessed subsequent transferees. But the Court explained that the time for bringing suit against an unassessed transferee was the number of years allowed for assessing the transferee — essentially reciting the rule from § 6501(a), quoted and italicized above, that bars a suit to collect tax debts after the period for assessing those debts has passed. See id. at 403, 59 S.Ct. 308. When the period of limitations for assessing transferees expires, reasoned the Court, a “suit in absence of assessment of transferee liability” is barred. Id. at 404-05, 59 S.Ct. 308; see also United States v. Floersch, 276 F.2d 714, 717 (10th Cir.1960) (“It is well settled that the government may proceed against property in the hands of a transferee ..., providing it proceeds within the additional year specified in [§ 311, now § 6901].”).
To be sure, before the statute of limitations for assessing taxes has expired, the IRS may collect unassessed tax liabilities in court, but that is no different than in the case of any other taxpayer. See Goldston, 104 F.3d at 1201 (“While the absence of an assessment prevents the IRS from administratively collecting the tax, it may still file a civil action.... ”). Therefore, it is no surprise that the Supreme Court in Leigh-ton ruled for the IRS where the IRS collected a defunct corporation’s taxes from unassessed transferees. See Leighton, 289 U.S. 506, 53 S.Ct. 719.
But the Leighton Court did not address what happens when the IRS brings suit against an unassessed transferee after the period for assessing the transferee has passed. As I showed above, that question was answered by the Supreme Court in Continental (not to mention in the text of §§ 6501(a) and 6901(a)). And according to Continental, once the assessment period has expired, the IRS cannot collect in court from an unassessed transferee — just as it cannot collect in court from any other unassessed taxpayer. Because the IRS had at least four years to assess Holmes— not to mention extra time from tolled periods, see, e.g., 26 U.S.C. § 6503(a)(1) — and the IRS still did not assess or commence suing him in time, the IRS cannot bring the present action to collect CGCI’s outstanding tax liability from Holmes.
B.
Still, this rule from §§ 6501(a) and 6901(a) and Continental has not been followed consistently. Indeed, some courts *1242 have construed Continental as applying to subsequent transferees only, leaving initial transferees to be governed by the rule that the IRS wants to apply here. For instance, in Signal Oil & Gas Co. v. United States, 125 F.2d 476 (9th Cir.1942), the Ninth Circuit explained,
Since appellant, a second transferee, is not a “transferee of property of a taxpayer” [ie., an initial transferee], the six-year [now ten-year] period of section 278(d) [now § 6502(a) ] to sue the first transferee of .the taxpayer after assessment of the taxpayer does not apply to appellant. The. applicable provision ... is section 277(a)(2) [now § 6501(a) ], providing that in the absence of assessment, here of either taxpayer or transferee, suits for such tax liability shall be begun within four years after the return was filed.
Id. at 480 (internal citations omitted) (citing ConCl, 305'U.S. at 404, 59 S.Ct. 308).
But according to the Tax Code, the only difference between an initial transferee and a subsequent transferee is the period of limitations for assessment, not that § 6501(a) applies to one but not the other. “In the case of the liability of a transferee of a transferee” — ie., a subsequent transferee — -the Tax Code grants the IRS one extra year to assess each subsequent transferee, up to “but not more than 3 years after the expiration of the period of limitation for assessment against the initial transferor____” 26 U.S.C. § 6901(c)(2); see also Bos Lines, Inc. v. Comm’r, 354 F.2d 830, 834-35 (8th Cir.1965) (concluding the Tax Code “does not recognize any distinction between a ‘transferee’ and a ‘transferee of a transferee’, except with regard to the period of limitation”). Thus, the fact that Continental’s holding concerned a subsequent transferee and not an initial transferee does not, without more, explain why § 6501(a) should apply to subsequent transferees but not initial transferees.
Such a distinction is all the more untenable in light of the blanket declaration in § 6901(a) that all transferee liability “shall ... be assessed, paid, and collected” just like the transferor’s tax liability (unless the rest of § 6901 says otherwise). The IRS’s regulation for collecting transferred assets is even more explicit: “The liability ... of a transferee of property of any person liable in respect of any other tax ... shall be assessed against such transferee and paid and collected in the same manner and subject to the same provisions and limitations as in the case of the [underlying tax liability].... ” 26 C.F.R. § 301.6901-l(a)(2) (West 2013) (emphasis added).[9]
Moreover, the IRS’s regulation explicitly applies to the transfer at issue here— namely, where a shareholder received distributions from his corporation. See id. (“in any case where the liability of the transferee arises on the liquidation of a corporation”). Thus, even if, as the IRS now claims, Updike once permitted suits against unassessed transferees at any point during the collection period for an assessed transferor, the IRS’s regulations clarify that the Tax Code does not treat transferee liability arising from corporate distributions differently any more.
*1243 Besides, the Supreme Court’s decision in Continental is more recent than its decision in Updike, and in light of Continental’s logic, any theory in Updike extending the period of limitations for collecting in court from an unassessed transferee was effectively abrogated by Continental’s holding. In Continental, the Court held that the IRS’s suit against a subsequent transferee was time-barred because the subsequent transferee was never assessed and the time for assessing that transferee had expired. See 305 U.S. at 404, 59 S.Ct. 308. As noted above, the only difference between how the Tax Code treats an initial transferee and a subsequent transferee is the amount of time the IRS has to assess the two. So since the IRS cannot bring suit against an unassessed subsequent transferee after the period for assessing that transferee has passed (per Continental and § 6501(a)), there is no principled basis under which the IRS could nonetheless proceed in court against an unassessed initial transferee after his assessment period has passed.[10]
Admittedly, the practical consequences of limiting suit against unassessed transferees to the period for assessing them could result in cutting off the transferee’s liability before the acts which give rise to it take place. According to §§ 6501(a) and 6901(a), the IRS has four years (excluding tolled periods) from when the taxpayer files its return to assess or sue the taxpayer’s transferee. But the IRS has ten years from when it assesses the taxpayertransferor to collect from that taxpayer. 26 U.S.C. •§ 6502(a): So conceivably, if the IRS did not collect during the first few years of the taxpayer’s collection period, an ingenious taxpayer could then transfer his assets as soon as the period for assessing or suing a transferee has passed, thereby insulating the assets from the IRS’s collection before the ten-year collections period has expired.
Yet this argument applies with equal force to subsequent transferees, and there is no doubt that subsequent transferees cannot be sued after the period for .assessing them has passed. See, e.g., Cont’l, 305 U.S. at 404-05, 59 S.Ct. 308. So even if the IRS were right as to initial transferees, the ingenious taxpayer still would be just one more transfer away from again insulating his assets from tax collection.
Moreover, the Tax Court has already rejected a version of this argument in a case about a shit against subsequent transferees. See Columbia Pictures Indus., Inc. v. Comm’r, 55 T.C. 649, 661 (1971). In Columbia Pictures, the Tax Court pointed out that the IRS had other procedures available to “protect against” a taxpayer insulating itself from liability through multiple transfers. Id. For instance, noted the court, the IRS could “obtain waivers from the original taxpayer,” thereby pushing back the period of limitations for assessing the transferor and, as a result, for assessing the transferees, too (since their period of limitations is based on when the taxpayer’s period of limitations expires). Id. Additionally, now the IRS also has the Federal Debt Collec *1244 tion Procedures Act of 1990, which offers the IRS a way to avoid any transfer designed to defraud, and that Act has a statute of limitations of six years after the transfer (or two years after the transfer could reasonably have been discovered). See 28 U.S.C. § 3306.
In any event, Congress seemed fully aware of this tension, and yet it drafted the transferee-liability statute in this fashion anyway. The most glaring evidence of Congress’s intent is the fact that. Congress actually eliminated this tension with respect to fiduciary liability, even while declining to do so with respect to transferee liability. Section 6901(c)(3) of the Tax Code says the period of limitations for assessing fiduciary liability is “not later than 1 year after the liability arises.... ” 26 U.S.C. § 6901(c)(3) (emphasis added). Thus, our ingenious taxpayer could not insulate his assets from IRS collection by using a fiduciary, since the IRS can collect from a fiduciary anytime within a year “after the liability arises” — i.e., after the fiduciary comes into the picture. Therefore, Congress knew how to draft a period of limitations that prevents this sort of gamesmanship. That Congress chose not to draft such a period of limitations with respect to transferees does not appear accidental, and we must honor Congress’s choice. Cf Touche Ross & Co. v. Redington, 442 U.S. 560, 571-72, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) (concluding Congress did not intend to create a private right of action with one section of a statute because Congress explicitly created a private right of action with another).
C.
The IRS’s rebuttal is unavailing. It relies on the Supreme Court’s decision in United States v. Galletti 541 U.S. 114, 124 S.Ct. 1548, 158 L.Ed.2d 279 (2004), to say that, once it assessed the transferor CGCI, it could file suit against an unassessed transferee like Holmes at any point during the ten years that § 6502 affords to collect CGCI’s tax liability. But Galletti does not apply to this case.
In Galletti the IRS assessed a partnership — as opposed to a corporation like CGCI — for various tax liabilities. When the partnership failed to satisfy the debt, the IRS attempted to collect from the general partners without separately assessing them. The partners argued they had to be separately assessed within three years of the partnership’s tax return filings, and since the time for assessment had lapsed, the IRS could no longer collect the liability from them.
The Supreme Court disagreed. It concluded that § 6501(a) does not require the IRS to make “separate assessments of a single tax debt against persons or entities secondarily liable for that debt”; the statute permitted the IRS to collect from those who were secondarily liable just as it permitted the IRS to collect from those who were primarily liable, so long as the IRS did so within the ten-year post-assessment collection period provided by § 6502. Galletti 541 U.S. at 121-22, 124 S.Ct. 1548. The Court reached this conclusion because both §§ 6501(a) and 6502 focus on the “tax ... assessed” as opposed to the taxpayer assessed. Id. at 123, 124 S.Ct. 1548 (emphásis in original). And, reasoned the Court,
[o]nee a tax has been properly assessed, nothing in the [Tax] Code requires the IRS to duplicate its efforts by separately assessing the same tax against individuals or entities who are not the actual taxpayers but are, by reasons of state law, liable for payment of the taxpayer’s debt. The consequences of the assessment ... attach to the tax debt without *1245 reference to the special circumstances of the secondarily liable parties.
Id. (emphasis added).
But in this case, unlike in Galletti something in the Tax Code does require the IRS to “duplicate its efforts by separately assessing the same tax” — § 6901 requires the IRS to separately assess transferees.[11] And, as the Galletti Court rightly noted, no statute created a . similar requirement for separately assessing general partners — and with good reason. General partners, like those in Galletti are “secondarily liable” for a partnership’s debt, while shareholder transferees are not. As we explained in United States v. Floersch,
There is no relation between secondary liability, as ordinarily understood, and transferee liability. Secondary liability is a personal liability which attaches when the remedy against the one primarily liable has been exhausted. It is a personal liability which may be satisfied from all the assets of the one secondarily liable. Transferee liability, on the other hand, imposes no personal liability. It subjects only the property in the hands of the transferee to the debts of the transferor.
276 F.2d at 717 (emphasis added).
The Galletti Court likewise noted it was using the phrase “secondary liability” only to mean “liability that is derived from the original or primary liability,” 541 U.S. at 122 n. 4, 124 S.Ct. 1548, not any liability arising from the taxpayer’s transfer of assets. Besides, as a matter of basic partnership law, the general partners in Galletti did not require a second assessment because they were already liable for whatever debts — including tax debts — the partnership could not pay. By contrast, a shareholder like Holmes is not already liable for his corporation’s debts. He is liable in this case only because the corporation transferred assets to him — and only to the extent of the value of those assets transferred (unlike a general partner, who is liable until the debt is satisfied).
Finally, Galletti turned on the fact that §§ 6501(a) and 6502’s text applied to the “tax” assessed as opposed to any one “taxpayer” assessed, but that distinction does not apply here. The portion of the Tax Code relevant to a transferee like Holmes describes the period of limitation as expiring within one year after “the period of limitation for assessment against the transferor.” 26 U.S.C. § 6901(c)(1) (emphasis added); cf. Hulburd, 296 U.S. at 307, 56 S.Ct. 197 (“[The IRS] had time ... to announce a new assessment, which would have brought up the question whether the liability once resting on the executors had devolved upon another.” (emphasis added)). That statutory language, unlike the language quoted in Galletti focuses on ■who is being assessed as opposed to what is being assessed. Galletti is not on point.
While the IRS’s claim here is brought within the ten-year period for collecting from CGCI, the IRS’s claim is not brought in compliance with the specific instructions *1246 “hereinafter in [§ 6901] provided” for collecting Holmes’s transferee liability. The IRS did not assess or commence suing Holmes “within 1 year after the expiration of the period of limitation for assessment against the transferor.” 26 U.S.C. § 6901(c)(1). And § 6501(a) disallows court proceedings to collect taxes “after the expiration of [the] period [of limitations for assessment].” Id. § 6501(a). Thus, under §§ 6501(a) and 6901, the present proceeding against Holmes is barred.
I would therefore reverse the district court on these grounds.

. The relevant portion of 26 U.S.C. § 65.02(a) (emphasis added) provides:
Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun—
(1) within 10 years after the assessment of the tax....

. The relevant portion of 26 U.S.C. § 6901(a) provides:
The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred:
(A) Transferees. — The liability, at law or in equity, of a transferee of property— (i) of a taxpayer in the case of a tax imposed by subtitle A (relating to income taxes),....

. The relevant portion of 26 U.S.C. § 6501(a) provides:
[T]he amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) ..., and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.

. The transferee’s share of the transferor’s tax liability is determined by the value of property transferred to him. See 14A J. Mertens, Law of Fed. Income Tax’n § 53:24 (2013 update) ("[The] transferee ... is liable to the extent of the assets received!] for any tax imposed upon the [transferor].").

."The ‘assessment,’ essentially a bookkeeping notation, is made when the Secretary or his delegate establishes an account against the taxpayer on the tax rolls.” Laing v. United States, 423 U.S. 161, 171 n. 13, 96 S.Ct. 473, 46 L.Ed.2d 416 (1976) (citing 26 U.S.C. § 6203) (emphasis added).

. These designations refer to the subchapter of Chapter 1 of Subtitle A of the Tax Code which governs how a corporation is taxed. So, for instance, "S Corporations” are taxed according to the rules found in Subchapter S of the Code.

. Holmes does not dispute the timeliness of the assessments against CGCI.

. The period of limitations for assessing a taxpayer like CGCI, the transferor here, is three years after the taxpayer files its return. ' See 26 U.S.C. § 6501(a). Thus, the IRS has four years — three plus one, per § 6901(c) — to assess a transferee like Holmes. That period may be even longer, however, because various provisions of the Tax Code suspend the clock, see, e.g., 26 U.S.C. § 6503(a)(1), although none of those tolling provisions are relevant in this case.

. The relevant portion of 26 C.F.R. § 301.6901-l(a)(2) provides:
The liability, at law or in equity, of a transferee of property of any person liable in respect of any other tax, in any case where the liability of the transferee arises on the liquidation of a corporation ..., shall be assessed against such transferee and paid and collected in the same manner and subject to the same provisions and limitations as in the case of the tax with respect to which such liability is incurred, except as hereinafter provided.

. Tax treatises concur. For instance, 4 Casey, Fed. Tax Prac. § 12:10 (May 2013 update) (footnotes omitted) (emphasis added) explains:
While the second transferee's ability to resist transferee liability generally rises no higher than that of any preceding transferee, its separate entity must be respected for procedural and limitation purposes, just as is required regarding the separate corporate entities of the taxpayer and the initial transferee; hence, a timely assessment against the initial transferee would not authorize suit against the second transferee within the ten-year collection period; a timely assessment against the second transferee would be an indispensable condition to such suit.

. Of course, even where the IRS is required to assess, it still may bring suit before the period for assessment has expired. See supra at 1241 (citing Leighton, 289 U.S. 506, 53 S.Ct. 719; Goldston, 104 F.3d at 1201). The IRS's failure to assess means that the IRS cannot use administrative remedies to collect the tax. But, as I have explained, the IRS's failure to assess also means that, once the period for assessment expires, the IRS can no longer bring suit, either. See 26 U.S.C. § 6501(a). I do recognize that an assessment is not necessary if the IRS wishes to proceed only in court, see supra at 1241, but I also recognize that the Tax Code disallows suits against the unassessed after the period for assessment expires.