**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee/Cross-
Appellant,

v.

JAMES F. HOLMES,

    Defendant-Appellant/Cross-
Appellee.

Nos. 12-1164, 12-1220

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(Civil Action No. 1:08-CV-02446-PAB-CBS)**

---

Frank W. Suyat, Dill Dill Carr Stonbraker & Hutchings, P.C. (John A. Hutchings, Dill Dill Carr Stonbraker & Hutchings, P.C., with him on the brief), Denver, Colorado, for Defendant-Appellant/Cross-Appellee.

Anthony T. Sheehan, Attorney, Tax Division of the Department of Justice (Kathryn Keneally, Assistant Attorney General, and Teresa E. McLaughlin, Attorney, Tax Division of the Department of Justice, and John F. Walsh, United States Attorney, with him on the brief), Washington, D.C., for Plaintiff-Appellee/Cross-Appellant.

---

Before **TYMKOVICH, HOLLOWAY** and **HOLMES,** Circuit Judges.

---

**HOLLOWAY**, Circuit Judge.

In this civil action, the United States sued Mr. James Holmes seeking to collect a federal tax debt owed by the now-defunct corporate entity Colorado Gas Compression, Inc. Defendant Holmes, the Appellant-Cross-Appellee in this court, had been the sole shareholder of Colorado Gas prior to the entity's demise. The district court granted final judgment in favor of the United States in the amount of $2,533,930.94. Defendant Holmes appeals from that judgment. The United States cross-appeals from the district court's decision regarding the date from which prejudgment interest would be awarded. This court has jurisdiction under 28 U.S.C. § 1291.

## I

The federal tax liabilities from which the present litigation arose were those of Colorado Gas. Mr. Holmes was the sole shareholder of Colorado Gas until it was dissolved by the Colorado Secretary of State in 2005, by which time it had ceased operations. In 1998, the IRS sent a notice of deficiency to Colorado Gas after determining that the company owed corporate income taxes for the years 1994, 1995, and 1996. Colorado Gas petitioned the United States Tax Court, challenging the determination. The Tax Court upheld the position of the IRS. On appeal, this court reversed and remanded to the Tax Court for a redetermination of the deficiencies. *See Colorado Gas Compression, Inc. v. Commissioner*, 366 F.3d 863 (10th Cir. 2004). On remand in 2005, the Tax Court entered a decision holding that Colorado Gas owed $923,049.00 in unpaid taxes plus $1,134,563.90

-2-

in interest.  The IRS then assessed the taxes against Colorado Gas.  (We will discuss *infra* the significance of assessment.)  Colorado Gas did not pay the assessed taxes and interest.

Colorado Gas made a series of distributions to Mr. Holmes in the years from 1995 to 2002, transfers which totaled over $3.6 million.  As will be explained *infra*, it is significant that Colorado Gas was in the process of winding up its active operations at this time.

The government commenced this lawsuit in November 2008.  The government invoked only provisions of Colorado law in its four-count complaint.  The first two counts alleged that Mr. Holmes was liable under the Colorado version of the Uniform Fraudulent Conveyances Act.  The third claim alleged that Mr. Holmes was liable under Colo. Rev. Stat. § 7-90-913 as an owner of Colorado Gas who had received assets in the liquidation of the company.  The fourth count alleged liability under Colo. Rev. Stat. § 7-108-403 because Mr. Holmes was a director who had voted for an unlawful distribution of the company's assets.

On the government's motion for summary judgment, the district court ruled that Mr. Holmes was liable but that the amount for which he was liable had not been proven.  In its ruling, the district court addressed only count three of the four counts alleged by the government.

The government later moved twice for entry of judgment, supporting its motions with calculations of Defendant's liability.  The district court granted the

-3-

second motion, entering final judgment in favor of the United States in the amount of $2,533,930.94. Defendant Holmes appeals from that judgment, and the government cross-appeals from the district court's calculation of the award of prejudgment interest.

## II

"We review a grant of summary judgment *de novo*, applying the same standard as the district court." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998). Under Fed. R. Civ. P. 56(a), summary judgment should be entered by the district court if "there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." On appeal,

> [w]e examine the record to determine whether any genuine issue of material fact was in dispute; if not, we determine whether the substantive law was applied correctly, and in so doing we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion.

*McKnight*, 149 F.3d at 1128 (brackets and quotations omitted).

## III

In his appeal from the district court's judgment, Mr. Holmes raises only a single issue: whether the claims of the government are barred by the Colorado statute of limitations.[1] The district court held that Mr. Holmes was liable under

---

[1]More specifically, Mr. Holmes contends that the government's third claim
(continued...)

Colorado Rev. Stat. § 7-90-913, which provides that if assets have been distributed to an owner in the liquidation of a company, a creditor of the dissolved corporation may enforce her claim against the owner up to the "total value of assets distributed to the owner . . . ." Actions by creditors under this statute are, Mr. Holmes argues, subject to the general two-year statute of limitations in Colo. Rev. Stat. § 13-80-102. And the government does not dispute that its claims would be barred under the state's statute of limitations *if* applicable: the government argues, however, that its claims are not subject to any state statute of limitations or extinguishment.

The government argues that its claims are instead limited only by the ten-year statute of limitations of 26 U.S.C. § 6502(a). This is not the position that the government took in the district court. Instead, in the district court the government argued that its claim was not subject to *any* period of limitations, whether state or federal. Consequently, we must first decide whether to consider the argument raised for the first time on appeal.

----

[1](...continued)
for relief, on which the district court's judgment was based, is barred by the applicable statute of limitations, as discussed in the text, *and* that the government's other claims are barred either by the applicable state statute of limitations or by a Colorado extinguishment statute. For our purposes, we address only the government's third claim and Mr. Holmes's arguments relevant to that claim.

Our general rule is that we may affirm a district court judgment on a basis different from that employed by the district court, assuming that the alternate basis is consistent with the record. And while in many of the cases in which we have followed this rule the theory was at least raised in the district court, *see, e.g., Bixler v. Foster*, 596 F.3d 751, 760 (10th Cir. 2010), that has not always been the case, *see, e.g., Jordan v. U.S. Dept. of Justice*, 668 F.3d 1188, 1200 (10th Cir. 2011). In his effort to persuade us not to follow our general rule in this case – and thus not to consider the government's newly raised argument – Mr. Holmes cites language from several of our opinions which seems on the surface to express a hostility to new arguments in tension with the general rule. But there is no conflict because the cases on which Mr. Holmes relies and from which he extracts this language are all cases in which it was the *appellant* who wished to present a new argument *to reverse* a district court judgment.[2]

Mr. Holmes has had an opportunity to respond to the government's new argument, both in his reply brief and at oral argument. One additional reason also weighs in favor of our following our general rule by considering the government's new argument for affirming the district court: the government's argument on appeal is narrower than the one it presented to the district court. In the district

---

[2]Mr. Holmes's reply brief cites *Hicks v. Gates Rubber Co.*, 928 F.2d 966, 970 (10th Cir. 1991); *Lyons v. Jefferson Bank & Tr.*, 994 F.2d 716, 721 (10th Cir. 1993); and *Anschutz Land & Livestock Co. v. Union Pacific RR*, 820 F.2d 338, 344 n.5 (10th Cir. 1987).

court, the government argued that it was not subject to any limitations whatsoever in pursuing this claim, but the government now concedes that it *is* bound by the ten-year limitation period of 26 U.S.C. § 6502(a). Therefore, we conclude that we should exercise our discretion by considering the government's appellate argument.

The basic facts are undisputed. As noted, the IRS issued a notice of deficiency to Colorado Gas in 1998, *see* 26 U.S.C. § 6212(a), alleging that the company owed taxes for the years 1994, 1995, and 1996. After proceedings in the Tax Court and an appeal to this court, the IRS assessed the tax against the company, as it is "authorized and required" to do by 26 U.S.C. § 6201(a). An "assessment" is "little more than the calculation or recording of a tax liability." *United States v. Galletti*, 541 U.S. 114, 122 (2004). But an assessment has important legal consequences nevertheless.

Section 6502(a) provides that when a tax has been properly assessed, the statute of limitations for collection of the tax is ten years from the date of assessment. Thus to claim entitlement to the ten-year period of limitations, the government must show that the tax was properly assessed. The government made this showing in the district court. Although 26 U.S.C. § 6501(a) initially states that the assessment must be made within three years from the filing of the return in question, other portions of the Internal Revenue Code provide that this three-year period is tolled by certain events. Here, in particular, the IRS asserts – and

we see nothing in the record, nor any argument to the contrary – that the three-year period is tolled when the IRS mails a notice of deficiency to the taxpayer, which was done here, and thereafter is prohibited from assessing or collecting, as it was when Colorado Gas petitioned the Tax Court. *See* 26 U.S.C. § 6503(a)(1). Under the statute, the three-year period did not begin to run until the proceedings initiated by the taxpayer had come to an end. In this case, the taxpayer's challenge was not finally resolved until July 2005, and the IRS timely filed assessments in 2002 and 2005.[3]

Mr. Holmes argues, however, that assessments against Colorado Gas did not extend the government's time to proceed against him but only against his company. Mr. Holmes relies on the provisions of 26 U.S.C. § 6901, which authorize the IRS to assess tax against a transferee (and then, of course, to take steps to collect). The IRS in response contends that these provisions merely provide it with an alternative way to pursue collection against a transferee, rather than prescribing a required method. On this point, the government is surely correct, as we have held: "[T]he collection procedures contained in § 6901 are not exclusive and mandatory, but are cumulative and alternative to the other

_____

[3]Before us, Mr. Holmes does not challenge the propriety of the 2002 assessments, which preceded the ultimate resolution of the taxpayer's petition for review in the Tax Court; consequently, we have no occasion to address that topic here. We merely note that the government's brief recites that the IRS filed the 2002 assessments following the first decision of the Tax Court and the 2005 assessments following the Tax Court's decision after remand from this court.

methods of tax collection recognized and used prior to the enactment of § 6901 and its statutory predecessors." *United States v. Russell*, 461 F.2d 605, 606 (10th Cir. 1972); *see also Leighton v. United States*, 289 U.S. 506 (1933).

Moreover, Mr. Holmes's argument is at odds with *United States v. Galletti*, 541 U.S. 114 (2004). In that case, the IRS had assessed delinquent taxes against a partnership. The government later sued general partners of the firm to collect the unpaid taxes. The partners in that case, like Mr. Holmes here, argued that the failure to assess the taxes against them individually meant that the government's suit was time barred, the assessment against the partnership having – according to their argument – extended the statute of limitations only as to the partnership and not as to them individually. The Supreme Court unanimously rejected that argument, observing that the IRS assesses taxes, not taxpayers. *Id.* at 123. The Court went on to hold that:

> Once a tax has been properly assessed, nothing in the [Internal Revenue] Code requires the IRS to duplicate its efforts by separately assessing the same tax against individuals or entities who are not the actual taxpayers but are, by reason of state law, liable for payment of the taxpayer's debt. The consequences of the assessment – in this case the extension of the statute of limitations for collection of the debt – attach to the tax debt without reference to the special circumstances of the secondarily liable parties.

*Id.*

Mr. Holmes contends that we should confine *Galletti* to its facts, that it would be an extension of the holding of that case to apply it to this case in which

the IRS is pursuing a shareholder of a corporation which was delinquent in its

taxes. But the logic and language of *Galletti* are not so easily cabined, we

believe. The IRS was not required to separately assess the taxes against Mr.

Holmes individually, and it follows that the IRS can validly invoke the ten-year

period of limitations as it has done.[4]

Mr. Holmes's primary argument, however, is that the government is

proceeding here under state law and as such is subject to the state limitations

period; under this view, any federal limitations provision is simply irrelevant to

this matter. Justice O'Connor, speaking for a unanimous Court, has said,

"Whether in general a state-law action brought by the United States is subject to a

---

[4]The dissent tries unsuccessfully to rebut our reliance on *Galletti*. The dissent attempts to distinguish *Galletti* by declaring that the Tax Code *requires* the IRS to assess the same tax against the transferee. Dissent at 18. The dissent simply ignores *Russell* and *Leighton*, the precedent which contradicts this premise as noted in our analysis.

Moreover, the dissent's reading of *United States v. Continental National Bank & Tr. Co.*, 305 U.S. 398 (1939), is flawed. Contrary to the dissent's reading, the Court in *Continental National* clearly recognized that a suit against a transferee would have been sustainable – based on the assessment against the transferor – if it had been brought within the time permitted for suit against the transferor. The Court made that clear before addressing the quite different set of facts that were presented there. Thus, the Court explained at the outset of its analysis that the government's suit "is not a suit upon assessment of deficiency against the taxpayer . . . . The time for such a suit, six years after assessment, expired long before the commencement of this suit." 305 U.S. at 403.

Because in this case the government did bring suit based on the assessment against the transferor and within the time permitted for suit against the transferor, the government's suit is timely, and *Continental National*, being based on a materially different factual context, offers no support to the dissent (which probably explains why Mr. Holmes has never cited or relied on the case).

-10-

federal or state statute of limitations is a difficult question." *United States v. California*, 507 U.S. 746, 758 (1993). But we do not face that difficulty here. Even though the government here proceeds against Mr. Holmes by invoking a provision of state law, we must not ignore the reality that "the present suit, though not against the corporation but against its transferee[] to subject assets in [his] hands to the payment of the tax, is in every real sense a proceeding in court to collect a tax." *United States v. Updike*, 281 U.S. 489, 494 (1930). As counsel for the government put it at oral argument, Mr. Holmes is making here the argument on which the government lost in *Updike*.[5]

Because, as in *Updike*, the government's action here is "in every real sense a proceeding in court to collect a tax," the government is "acting in its sovereign capacity in an effort to enforce rights ultimately grounded on federal law," *Bresson v. Commissioner*, 213 F.3d 1173, 1178 (9th Cir. 2000). Therefore, the government's claim is not subject to state statutes of limitation or extinguishment. *United States v. Summerlin*, 310 U.S. 414 (1940). As the Supreme Court expressed the rule in that case, "When the United States becomes entitled to a claim, acting in its governmental capacity and asserts its claim in that right, it

---

[5]In *Updike*, it was the government which argued that the proceedings were not to collect a tax. This was because the applicable period of limitations under the Internal Revenue Code then in force had passed.

-11-

cannot be deemed to have abdicated its governmental authority so as to become subject to a state statute putting a time limit upon enforcement." 310 U.S. at 417.

We hold that the district court did not err in granting summary judgment to the government on the issue of Mr. Holmes's liability as transferee for the taxes of his company.

## IV

In its cross-appeal, the government urges that the district court committed error in deciding the date from which prejudgment interest would accrue on the government's recovery. We conclude, however, that this issue was not properly preserved for appeal, and we accordingly decline to consider it.

The briefing in the district court on the issues relevant to the calculation of prejudgment interest was confused, as the government now admits, by the government's initial submission to the district court of an erroneous calculation. *See* Principal Brief and Response Brief for the Appellee-Cross-Appellant at 56-57. This miscalculation did more than confuse the question of how interest should be calculated: Because of one particular legal principle, the calculation was relevant to the issue of whether state or federal law should govern the award of prejudgment interest.[6] In its initial brief in support of its motion for summary

_____

[6]A nutshell explanation of this principle should suffice under the circumstances, and the district court provided such a summary:

(continued...)

-12-

judgment, the government argued that federal law should be applied to determine the prejudgment interest. In a *reply* brief in support of that motion, the government alternatively asserted that it was entitled to interest from the date of the transfers from Colorado Gas to Mr. Holmes if state law were determined to be applicable. The district court granted the motion for summary judgment in part, holding that the government's claim was not barred by limitations, but found the moving papers to be insufficient for the court to determine the prejudgment interest question.

With regard to the issue of prejudgment interest, the district court in that order noted that it might even be the case that both state and federal law would apply in part to the award of interest. The district judge noted further that the government had argued primarily that it was entitled to interest under federal law from the date of the transfers, but the United States had also argued alternatively that it was entitled to interest from the date of the transfers under state law. The

---

[6](...continued)
It appears to be fairly well established that where the value of assets transferred exceeds the transferor's total tax liability, including penalties and interest, the transferee is liable for the entire amount of the deficiency and the amount of interest is prescribed by federal law, *i.e.*, [26] U.S.C. § 6601. If the transferee receives less than the transferor's tax liability, state law determines the calculation of interest.

Dist. Ct. Order of 3/30/2011, II Aplt. App.379 (one internal citation omitted; statutory citation corrected).

parties had agreed that if state law applied, the governing statute would be Colo. Rev. Stat. § 5-12-102(a), which provides for prejudgment interest to be awarded to creditors when money has been "wrongfully withheld . . . ." But the district judge found that the government, while arguing for recovery under this statute in the alternative, had not provided "any analysis for why it was 'wrongful' of Defendant to retain the distributions from 1994-1997 when the Notice of Deficiency was not issued until 1998." II Aplt. App. at 380-81. The district court indicated that it would permit the government to submit another motion for determination of the prejudgment issues.

The district court thus plainly invited the government to articulate an argument as to why Defendant's failure to pay the corporation's taxes before a notice of deficiency had issued was "wrongful" as that term is used in the state statute. The government did not do so; instead, the government argued essentially that the point was moot because federal law should govern the calculation of prejudgment interest. The district court accordingly noted that the government appeared to have conceded that the Defendant's "conduct in continuing to liquidate the company without providing for payment of the tax liability would be wrongful only after receipt" of the notice of deficiency. *Id.* at 430.

On appeal, the government presents the argument that it declined to present to the district court, *i.e.,* that Defendant acted "wrongfully" by failing to pay his company's taxes before the IRS had served a notice of deficiency. This is

-14-

improper. We noted in Part III, *supra*, that we have discretion to consider arguments raised for the first time on appeal when those arguments support affirming the district court. But we do not permit new arguments on appeal when those arguments are directed to reversing the district court. Consequently, we decline to consider the government's argument and express no opinion on the correct resolution of the state law question that the government raises.

**Conclusion**

The judgment of the district court is AFFIRMED.

No. 12-1164/1220x, *United States v. Holmes*

**TYMKOVICH**, J., dissenting.


While I agree with much of the panel's reasoning, I part company on the result required by the Tax Code. Because I conclude the Tax Code bars the government's untimely proceeding against Holmes, I would reverse.

## I.

## A.

In this case, we are asked to identify the statute of limitations for when the IRS may bring suit to collect taxes from an unassessed transferee. No one statute in the Tax Code specifically answers this question. In trying to find the correct rule, the IRS and the majority rely on a statute providing the period of limitations for collecting from an assessed taxpayer. *See* 26 U.S.C. § 6502.[1] But James Holmes was never assessed. And, in fact, the IRS and majority's reading misses some of the relevant statutory context. *Cf. Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1175–78 (2013) (finding the applicable rule by analyzing the statutory context). In my view, that context requires us to consider two different statutes:

---

[1] The relevant portion of 26 U.S.C. § 6502(a) (emphasis added) provides:

> Where the assessment of any tax imposed by this title
> has been made within the period of limitation properly
> applicable thereto, such tax may be collected by levy or
> by a proceeding in court, but only if the levy is made or
> the proceeding begun—
> (1) *within 10 years after the assessment of the tax . . . .*

one providing that the IRS must collect from transferees in the same way as it collects from a taxpayer, *see* 26 U.S.C. § 6901(a),[2] and another providing that the IRS cannot collect in court from an unassessed taxpayer after the period for assessment has passed, *see id.* § 6501(a).[3]  The question in this case is whether § 6501(a)—the rule against collecting from one whom the IRS has not assessed after the assessment period has passed—also applies to an unassessed transferee like Holmes.  In light of § 6901(a)'s directive that transferees are to be treated as a taxpayer is treated, I think so.

---

[2]  The relevant portion of 26 U.S.C. § 6901(a) provides:

> The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred:
> . . .
> > (A) Transferees.—The liability, at law or in equity, of a transferee of property—
> > > (i) of a taxpayer in the case of a tax imposed by subtitle A (relating to income taxes), . . . .

[3]  The relevant portion of 26 U.S.C. § 6501(a) provides:

> [T]he amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) . . . , and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.

-2-

It should go without saying that "[t]he Tax Code is never a walk in the park," *Seven-Sky v. Holder*, 661 F.3d 1, 23 (D.C. Cir. 2011) (Kavanaugh, J., dissenting), and this case is no exception. So to facilitate my discussion of the Tax Code, I briefly summarize how transferee tax liability works and how the Tax Code resolves this case. Then I recite the facts and procedural history before turning to a detailed analysis of this case's question and the IRS's arguments.

**B.**

The Tax Code permits the IRS to collect a taxpayer's tax liability from other individuals or entities who receive asset transfers from the taxpayer. The Code directs the IRS to collect tax liability from the "transfer*ee*"—such as a shareholder who receives a cash distribution—according to the same rules under which it collects from the original taxpayer, the "transfer*or*"—such as the corporation that made the cash distribution to the shareholder. *See* 26 U.S.C. § 6901(a).[4] This principle applies to all three stages of tax collection: assessment,[5] payment, and collection. *See id.*

---

[4] The transferee's share of the transferor's tax liability is determined by the value of property transferred to him. *See* 14A J. Mertens, Law of Fed. Income Tax'n § 53:24 (2013 update) ("[The] transferee . . . is liable to the extent of the assets received[] for any tax imposed upon the [transferor].").

[5] "The 'assessment,' essentially a bookkeeping notation, is made when the Secretary or his delegate establishes an account *against the taxpayer* on the tax rolls." *Laing v. United States*, 423 U.S. 161, 171 n.13 (1976) (citing 26 U.S.C. § 6203) (emphasis added).

-3-

To be sure, the IRS may collect taxes in court instead of through the assessment process. *See Goldston v. United States (In re Goldston)*, 104 F.3d 1198, 1201 (10th Cir. 1997); *see also Leighton v. United States*, 289 U.S. 506 (1933) (holding the same is true with transferees). But the Tax Code bars the IRS from bringing such a suit unless the IRS does so *before* the period for assessment expires. *See* 26 U.S.C. § 6501(a). And the Tax Code does not alter that rule with respect to transferees. Therefore, unless the IRS assesses a transferee, it cannot bring suit to collect the transferee tax liability after the period for assessing that transferee has passed. *See United States v. Cont'l Nat'l Bank & Trust Co.*, 305 U.S. 398, 404–05 (1939).

In this case, the transferee, Holmes, was not assessed for his transferee tax liability, and the IRS did not bring suit against him until *after* the period for assessing him as a transferee had expired. Accordingly, the suit was untimely.

## C.

I now turn to the factual background and procedural history relevant to my conclusion. Certain corporations can elect to be taxed, for federal tax purposes, either as pass-through entities (*i.e.*, "S Corporations") or as separately taxed entities (*i.e.*, "C Corporations").[6] Between its incorporation in 1977 and its

---

[6] These designations refer to the subchapter of Chapter 1 of Subtitle A of the Tax Code which governs how a corporation is taxed. So, for instance, "S Corporations" are taxed according to the rules found in Subchapter S of the Code.

dissolution in 2005, Colorado Gas Compression, Inc. (CGCI) lawfully switched between filing as an S Corporation and filing as a C Corporation at various points in its history. In 1994, 1995, and 1996, CGCI—then an S Corporation—sold appreciated assets it had acquired in years when it was a C Corporation. Based on the advice of its tax attorney, CGCI paid taxes on those sales according to its status at the time of the tax—*i.e.*, as an S Corporation.

The IRS thought, however, that CGCI should have paid taxes on the asset sales according to its status at the time of asset acquisition—*i.e.*, as a C Corporation. Because the difference meant that CGCI owed back taxes, the IRS sent CGCI a notice of deficiency in 1998. CGCI disputed the deficiency, and the two parties litigated the matter in the Tax Court. Finally, in 2001, the court decided in the IRS's favor and entered judgment against CGCI for $805,557 in back taxes owed. The IRS then assessed CGCI for that amount.

CGCI appealed the Tax Court's decision, and we reversed and remanded for a new calculation of liability. *Colo. Gas Compression, Inc. v. Comm'r*, 366 F.3d 863 (10th Cir. 2004). On remand, the Tax Court re-calculated CGCI's liability to be $923,049. The IRS then assessed CGCI in 2005 for the difference, but CGCI was unable to make any payment.

In 2008, the IRS filed suit against Holmes because of transfers he had received from CGCI. From 1995 to 1997, CGCI made annual distributions to Holmes, its sole shareholder, totaling about $3 million. Then from 1998 to 2002,

after receiving its notice of tax deficiency in 1998, CGCI made another series of transfers to Holmes totaling $670,000. Based on these transfers from 1995 to 2002, the IRS in 2008 asserted a Colorado cause of action for transferee liability against Holmes, demanding over $4.9 million in transferee tax liability. That amount included interest from the original tax due dates in 1995, 1996, and 1997, respectively.

At the district court, Holmes argued the IRS's suit was untimely both under Colorado law and under the Tax Code's period of limitations for transferee liability, outlined in 26 U.S.C. § 6901(c). The district court rejected both arguments. It found the state statute of limitations inapplicable by virtue of the Supreme Court's decision in *United States v. Summerlin*, 310 U.S. 414 (1940), which held that state statutes of limitations do not apply to the federal government when it asserts a right derived from federal law in its sovereign capacity. And the court found the Tax Code's statute of limitations inapplicable because the IRS was not asserting § 6901 as a cause of action. Consequently, the court entered judgment against Holmes for just over $2.5 million.

## II.

### A.

The question raised here is, When may the IRS collect a corporation's tax from an unassessed transferee like Holmes? On appeal, the IRS for the first time

-6-

cites 26 U.S.C. § 6502 as the relevant statute of limitations. Section 6502 of the Tax Code provides the general statute of limitations for collecting tax liabilities, limiting the IRS to collections "within 10 years after the assessment of the tax." 26 U.S.C. § 6502(a). Thus, the statute requires a "tax" followed by an "assessment," with an outer limit of "10 years" after the assessment in which to commence collection proceedings against the taxpayer.

The IRS argues that the Tax Code authorizes it to collect from an unassessed transferee like Holmes at any point during the ten-year period following its assessment of the transferor, CGCI, which occurred on January 23, 2002.[7] For this argument, the IRS relies on the Supreme Court's decision in *United States v. Updike*, 281 U.S. 489 (1930). In *Updike*, the government argued that a suit against transferees to collect the transferor's tax liability was not a proceeding to collect a tax. *Id.* at 492. The Court rejected that argument in light of § 280 (now § 6901) of the Tax Code, which directed that the rules for assessment and collection applicable to the transferor also apply to transferees. *See id.* at 492–93. Thus, the Court found the IRS time-barred from bringing suit against the transferees where the collection period for the original taxpayer-transferor had long expired. *Id.* at 494–95.

---

[7] Holmes does not dispute the timeliness of the assessments against CGCI.

Based on *Updike*, the IRS now claims it has ten years from the *date of assessing CGCI* to bring suit against Holmes, even though Holmes was never separately assessed. The majority agrees, but I think they are wrong.

My reading of the Tax Code does not support the IRS's conclusion. Section 6901(a) tells us that a transferee's tax liability "shall . . . be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred." 26 U.S.C. § 6901(a). I interpret this general rule to mean that transferee liability is to be assessed, paid, and collected under the same rules that apply to assessing, paying, and collecting the ordinary, pre-transfer tax liability. *See Comm'r v. Stern*, 357 U.S. 39, 43 (1958) (noting that § 311, now § 6901, "was designed 'to provide for the enforcement of [transferee] liability . . . by the procedure provided in the [Tax Code] for the enforcement of tax deficiencies'" (quoting S. Rep. No. 69-52, at 30 (1926))); *see also Hulburd v. Comm'r*, 296 U.S. 300, 306 (1935) ("If some one [sic] else was to be charged, there would be *need of a new assessment* . . . ." (citing § 280, now § 6901) (emphasis added)).

The only exceptions to this general rule are those "hereinafter in [§ 6901] provided." 26 U.S.C. § 6901(a). And the only exception relevant here is found in § 6901(c)(1), which extends the "period of limitations for assessment of" transferee liability to "within 1 year after the expiration of the period of limitation

for assessment against the transferor."[8]  Otherwise, § 6901 contains no unique period of limitations for collecting in court from an unassessed transferee, so to determine that period, we must look to the "same provisions and limitations" of the Tax Code that supply the general rule for collecting an unassessed tax liability after the time for assessment has expired.  *See id.* § 6901(a).

The applicable provision, 26 U.S.C. § 6501(a), leads in the opposite direction of the majority's analysis.  The rule for collection without assessment is:  "[T]he amount of any tax imposed by this title shall be assessed . . . , and *no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.*"  *Id.* (emphasis added).  Here, the IRS has not assessed the transferee Holmes, and the "period" for when Holmes's transferee tax liability "shall be assessed" has passed.  Thus, § 6501(a) does not permit the IRS to commence collection proceedings.

This straightforward application of the Tax Code's text is not novel.  The Supreme Court reached the same conclusion in *Continental*.  In that case, the IRS had assessed the taxpayer and the initial transferee, but it had not assessed the subsequent transferees.  *See* 305 U.S. at 400, 404.  The IRS argued that the period

_____

[8]  The period of limitations for assessing a taxpayer like CGCI, the transferor here, is three years after the taxpayer files its return.  *See* 26 U.S.C. § 6501(a).  Thus, the IRS has four years—three plus one, per § 6901(c)—to assess a transferee like Holmes.  That period may be even longer, however, because various provisions of the Tax Code suspend the clock, *see, e.g.*, 26 U.S.C. § 6503(a)(1), although none of those tolling provisions are relevant in this case.

-9-

to collect from the assessed initial transferee—a period dictated by a precursor to § 6502(a), the statute the IRS relies upon here—should also apply to the unassessed subsequent transferees. But the Court explained that the time for bringing suit against an unassessed transferee was the number of years allowed for assessing the transferee—essentially reciting the rule from § 6501(a), quoted and italicized above, that bars a suit to collect tax debts after the period for assessing those debts has passed. *See id.* at 403. When the period of limitations for assessing transferees expires, reasoned the Court, a "suit in absence of assessment of transferee liability" is barred. *Id.* at 404–05; *see also United States v. Floersch*, 276 F.2d 714, 717 (10th Cir. 1960) ("It is well settled that the government may proceed against property in the hands of a transferee . . . , providing it proceeds within the additional year specified in [§ 311, now § 6901].").

To be sure, *before* the statute of limitations for assessing taxes has expired, the IRS may collect unassessed tax liabilities in court, but that is no different than in the case of any other taxpayer. *See Goldston*, 104 F.3d at 1201 ("While the absence of an assessment prevents the IRS from administratively collecting the tax, it may still file a civil action . . . ."). Therefore, it is no surprise that the Supreme Court in *Leighton* ruled for the IRS where the IRS collected a defunct corporation's taxes from unassessed transferees. *See Leighton*, 289 U.S. 506.

But the *Leighton* Court did not address what happens when the IRS brings suit against an unassessed transferee *after* the period for assessing the transferee has passed.  As I showed above, that question was answered by the Supreme Court in *Continental* (not to mention in the text of §§ 6501(a) and 6901(a)).  And according to *Continental*, once the assessment period has expired, the IRS cannot collect in court from an unassessed transferee—just as it cannot collect in court from any other unassessed taxpayer.  Because the IRS had at least four years to assess Holmes—not to mention extra time from tolled periods, *see, e.g.*, 26 U.S.C. § 6503(a)(1)—and the IRS still did not assess or commence suing him in time, the IRS cannot bring the present action to collect CGCI's outstanding tax liability from Holmes.

## B.

Still, this rule from §§ 6501(a) and 6901(a) and *Continental* has not been followed consistently.  Indeed, some courts have construed *Continental* as applying to *subsequent* transferees only, leaving *initial* transferees to be governed by the rule that the IRS wants to apply here.  For instance, in *Signal Oil & Gas Co. v. United States*, 125 F.2d 476 (9th Cir. 1942), the Ninth Circuit explained,

> Since appellant, a second transferee, is not a "transferee of property of a taxpayer" [*i.e.*, an initial transferee], the six-year [now ten-year] period of section 278(d) [now § 6502(a)] to sue the first transferee of the taxpayer after assessment of the taxpayer does not apply to appellant. The applicable provision . . . is section 277(a)(2) [now § 6501(a)], providing that in the absence of assessment,

-11-

here of either taxpayer or transferee, suits for such tax liability shall be begun within four years after the return was filed.

*Id.* at 480 (internal citations omitted) (citing *Cont'l*, 305 U.S. at 404).

But according to the Tax Code, the only difference between an initial transferee and a subsequent transferee is the period of limitations for assessment, *not* that § 6501(a) applies to one but not the other. "In the case of the liability of a transferee of a transferee"—*i.e.*, a subsequent transferee—the Tax Code grants the IRS one extra year to assess each subsequent transferee, up to "but not more than 3 years after the expiration of the period of limitation for assessment against the initial transferor . . . ." 26 U.S.C. § 6901(c)(2); *see also Bos Lines, Inc. v. Comm'r*, 354 F.2d 830, 834–35 (8th Cir. 1965) (concluding the Tax Code "does not recognize any distinction between a 'transferee' and a 'transferee of a transferee', except with regard to the period of limitation"). Thus, the fact that *Continental*'s holding concerned a subsequent transferee and not an initial transferee does not, without more, explain why § 6501(a) should apply to subsequent transferees but not initial transferees.

Such a distinction is all the more untenable in light of the blanket declaration in § 6901(a) that all transferee liability "*shall . . . be assessed*, paid, and collected" just like the transferor's tax liability (unless the rest of § 6901 says otherwise). The IRS's regulation for collecting transferred assets is even more explicit: "The liability . . . of a transferee of property of any person liable in

-12-

respect of any other tax . . . *shall be assessed against such transferee* and paid and collected in the same manner and subject to the same provisions and limitations as in the case of the [underlying tax liability] . . . ." 26 C.F.R. § 301.6901-1(a)(2) (West 2013) (emphasis added).[9]

Moreover, the IRS's regulation explicitly applies to the transfer at issue here—namely, where a shareholder received distributions from his corporation. *See id.* ("in any case where the liability of the transferee arises on the liquidation of a corporation"). Thus, even if, as the IRS now claims, *Updike* once permitted suits against unassessed transferees at any point during the collection period for an assessed transferor, the IRS's regulations clarify that the Tax Code does not treat transferee liability arising from corporate distributions differently any more.

Besides, the Supreme Court's decision in *Continental* is more recent than its decision in *Updike*, and in light of *Continental*'s logic, any theory in *Updike* extending the period of limitations for collecting in court from an unassessed transferee was effectively abrogated by *Continental*'s holding. In *Continental*,

---

[9] The relevant portion of 26 C.F.R. § 301.6901-1(a)(2) provides:

> The liability, at law or in equity, of a transferee of property of any person liable in respect of any other tax, in any case where the liability of the transferee arises on the liquidation of a corporation . . . , shall be assessed against such transferee and paid and collected in the same manner and subject to the same provisions and limitations as in the case of the tax with respect to which such liability is incurred, except as hereinafter provided.

the Court held that the IRS's suit against a subsequent transferee was time-barred because the subsequent transferee was never assessed and the time for assessing that transferee had expired. *See* 305 U.S. at 404. As noted above, the only difference between how the Tax Code treats an initial transferee and a subsequent transferee is the amount of time the IRS has to assess the two. So since the IRS cannot bring suit against an unassessed *subsequent* transferee after the period for assessing that transferee has passed (per *Continental* and § 6501(a)), there is no principled basis under which the IRS could nonetheless proceed in court against an unassessed *initial* transferee after his assessment period has passed.[10]

Admittedly, the practical consequences of limiting suit against unassessed transferees to the period for assessing them could result in cutting off the transferee's liability before the acts which give rise to it take place. According to §§ 6501(a) and 6901(a), the IRS has *four* years (excluding tolled periods) from

---

[10] Tax treatises concur. For instance, 4 Casey, Fed. Tax Prac. § 12:10 (May 2013 update) (footnotes omitted) (emphasis added) explains:

> While the second transferee's ability to resist transferee liability generally rises no higher than that of any preceding transferee, its separate entity must be respected for procedural and limitation purposes, *just as is required regarding the separate corporate entities of the taxpayer and the initial transferee*; hence, a timely assessment against the initial transferee would not authorize suit against the second transferee within the ten-year collection period; a timely assessment against the second transferee would be an *indispensable condition* to such suit.

when the taxpayer files its return to assess or sue the taxpayer's transferee. But the IRS has *ten* years from when it assesses the taxpayer-transferor to collect from that taxpayer. 26 U.S.C. § 6502(a). So conceivably, if the IRS did not collect during the first few years of the taxpayer's collection period, an ingenious taxpayer could then transfer his assets as soon as the period for assessing or suing a transferee has passed, thereby insulating the assets from the IRS's collection before the ten-year collections period has expired.

Yet this argument applies with equal force to *subsequent* transferees, and there is no doubt that subsequent transferees cannot be sued after the period for assessing them has passed. *See, e.g.*, *Cont'l*, 305 U.S. at 404–05. So even if the IRS were right as to initial transferees, the ingenious taxpayer still would be just one more transfer away from again insulating his assets from tax collection.

Moreover, the Tax Court has already rejected a version of this argument in a case about a suit against subsequent transferees. *See Columbia Pictures Indus., Inc. v. Comm'r*, 55 T.C. 649, 661 (1971). In *Columbia Pictures*, the Tax Court pointed out that the IRS had other procedures available to "protect against" a taxpayer insulating itself from liability through multiple transfers. *Id.* For instance, noted the court, the IRS could "obtain waivers from the original taxpayer," thereby pushing back the period of limitations for assessing the transferor and, as a result, for assessing the transferees, too (since their period of limitations is based on when the taxpayer's period of limitations expires). *Id.*

-15-

Additionally, now the IRS also has the Federal Debt Collection Procedures Act of 1990, which offers the IRS a way to avoid any transfer designed to defraud, and that Act has a statute of limitations of six years after the transfer (or two years after the transfer could reasonably have been discovered). *See* 28 U.S.C. § 3306.

In any event, Congress seemed fully aware of this tension, and yet it drafted the transferee-liability statute in this fashion anyway. The most glaring evidence of Congress's intent is the fact that Congress actually eliminated this tension with respect to *fiduciary* liability, even while declining to do so with respect to *transferee* liability. Section 6901(c)(3) of the Tax Code says the period of limitations for assessing fiduciary liability is "not later than 1 year *after the liability arises* . . . ." 26 U.S.C. § 6901(c)(3) (emphasis added). Thus, our ingenious taxpayer could not insulate his assets from IRS collection by using a fiduciary, since the IRS can collect from a fiduciary anytime within a year "after the liability arises"—*i.e.*, after the fiduciary comes into the picture. Therefore, Congress knew how to draft a period of limitations that prevents this sort of gamesmanship. That Congress chose not to draft such a period of limitations with respect to *transferees* does not appear accidental, and we must honor Congress's choice. *Cf. Touche Ross & Co. v. Redington*, 442 U.S. 560, 571–72 (1979) (concluding Congress did not intend to create a private right of action with one section of a statute because Congress explicitly created a private right of action with another).

-16-

# C.

The IRS's rebuttal is unavailing. It relies on the Supreme Court's decision in *United States v. Galletti*, 541 U.S. 114 (2004), to say that, once it assessed the transferor CGCI, it could file suit against an unassessed transferee like Holmes at any point during the ten years that § 6502 affords to collect CGCI's tax liability. But *Galletti* does not apply to this case.

In *Galletti*, the IRS assessed a partnership—as opposed to a corporation like CGCI—for various tax liabilities. When the partnership failed to satisfy the debt, the IRS attempted to collect from the general partners without separately assessing them. The partners argued they had to be separately assessed within three years of the partnership's tax return filings, and since the time for assessment had lapsed, the IRS could no longer collect the liability from them.

The Supreme Court disagreed. It concluded that § 6501(a) does not require the IRS to make "separate assessments of a single tax debt against persons or entities secondarily liable for that debt"; the statute permitted the IRS to collect from those who were secondarily liable just as it permitted the IRS to collect from those who were primarily liable, so long as the IRS did so within the ten-year post-assessment collection period provided by § 6502. *Galletti*, 541 U.S. at 121–22. The Court reached this conclusion because both §§ 6501(a) and 6502 focus on the "*tax* . . . assessed" as opposed to the *taxpayer* assessed. *Id.* at 123 (emphasis in original). And, reasoned the Court,

-17-

> [o]nce a tax has been properly assessed, *nothing in the [Tax] Code requires the IRS to duplicate its efforts by separately assessing the same tax* against individuals or entities who are not the actual taxpayers but are, by reasons of state law, liable for payment of the taxpayer's debt. The consequences of the assessment . . . attach to the tax debt without reference to the special circumstances of the *secondarily liable* parties.

*Id.* (emphasis added).

But in this case, unlike in *Galletti*, *something* in the Tax Code *does require* the IRS to "duplicate its efforts by separately assessing the same tax"—§ 6901 requires the IRS to separately assess transferees.[11]  And, as the *Galletti* Court rightly noted, no statute created a similar requirement for separately assessing general partners—and with good reason.  General partners, like those in *Galletti*, are "secondarily liable" for a partnership's debt, while shareholder transferees are not.  As we explained in *United States v. Floersch*,

> There is no relation between secondary liability, as ordinarily understood, and transferee liability. Secondary liability is a personal liability which attaches when the remedy against the one primarily liable has been exhausted.  It is a personal liability which may be

---

[11]  Of course, even where the IRS is required to assess, it still may bring suit before the period for assessment has expired.  *See supra* at 10 (citing *Leighton*, 289 U.S. 506; *Goldston*, 104 F.3d at 1201).  The IRS's failure to assess means that the IRS cannot use administrative remedies to collect the tax.  But, as I have explained, the IRS's failure to assess also means that, once the period for assessment expires, the IRS can no longer bring suit, either.  *See* 26 U.S.C. § 6501(a).  I do recognize that an assessment is not necessary if the IRS wishes to proceed only in court, *see supra* at 10, but I also recognize that the Tax Code disallows suits against the unassessed after the period for assessment expires.

-18-

> satisfied from all the assets of the one secondarily liable. *Transferee liability, on the other hand, imposes no personal liability. It subjects only the property in the hands of the transferee to the debts of the transferor.*

276 F.2d at 717 (emphasis added).

The *Galletti* Court likewise noted it was using the phrase "secondary liability" only to mean "liability that is derived from the original or primary liability," 541 U.S. at 122 n.4, not any liability arising from the taxpayer's transfer of assets. Besides, as a matter of basic partnership law, the general partners in *Galletti* did not require a second assessment because they were already liable for whatever debts—including tax debts—the partnership could not pay. By contrast, a shareholder like Holmes is not already liable for his corporation's debts. He is liable in this case only because the corporation transferred assets to him—and only to the extent of the value of those assets transferred (unlike a general partner, who is liable until the debt is satisfied).

Finally, *Galletti* turned on the fact that §§ 6501(a) and 6502's text applied to the "tax" assessed as opposed to any one "taxpayer" assessed, but that distinction does not apply here. The portion of the Tax Code relevant to a transferee like Holmes describes the period of limitation as expiring within one year after "the period of limitation for assessment *against the transferor*." 26 U.S.C. § 6901(c)(1) (emphasis added); *cf. Hulburd*, 296 U.S. at 307 ("[The IRS] had time . . . to announce a *new assessment*, which would have brought up the

-19-

question *whether the liability* once resting on the executors *had devolved upon another*." (emphasis added)).  That statutory language, unlike the language quoted in *Galletti*, focuses on *who* is being assessed as opposed to *what* is being assessed.  *Galletti* is not on point.

\*   \*   \*

While the IRS's claim here is brought within the ten-year period for collecting from CGCI, the IRS's claim is not brought in compliance with the specific instructions "hereinafter in [§ 6901] provided" for collecting Holmes's transferee liability.  The IRS did not assess or commence suing Holmes "within 1 year after the expiration of the period of limitation for assessment against the transferor."  26 U.S.C. § 6901(c)(1).  And § 6501(a) disallows court proceedings to collect taxes "after the expiration of [the] period [of limitations for assessment]."  *Id.* § 6501(a).  Thus, under §§ 6501(a) and 6901, the present proceeding against Holmes is barred.

I would therefore reverse the district court on these grounds.